MORRIS SILVER, PLAINTIFF, v. COMMONWEALTH TRUST COMPANY, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT AND THIRD-PARTY PLAINTIFF, v. THE TRUST COMPANY OF NEW JERSEY, THIRD-PARTY DEFENDANT.

Hudson County Court
Law Division

Decided February 4, 1953.

*Mr. Isidore Parnes,* attorney for plaintiff.

*Messrs. Burke, Sheridan & Hourigan,* attorneys for defendant and third-party plaintiff.

*Mr. Thomas E. Lynch,* attorney for third-party defendant (*Mr. Benjamin Gross,* of counsel).

DREWEN, J. C. C.   This is defendants' motion for summary judgment under *Rule* 3:56, as heard on reargument. Upon its original submission the motion was denied in accordance with the opinion reported in 22 *N. J. Super.* 604. All pertinent facts and details are fully set forth in the reported opinion (*ibid.*). The reargument embodies not only certain new matter but also the further urging of points previously made.   Care will be taken to avoid needless repetition.   The present opinion is supplemental to that already rendered and must be so read.

To begin with, it is insisted that plaintiff's case is manifestly defeated at the outset because of plaintiff's full awareness of the inchoate status of the corporation and of Eisenberg's relation thereto, as already detailed.   From this state of facts these propositions are submitted as conclusive, *viz.*: that plaintiff knew there was no one with express authority to negotiate the check *sub judice*; that in the circumstances plaintiff must be presumed to have intended that the check be negotiated by Eisenberg in quite the manner in which he did negotiate it; and that plaintiff's intent in the premises must be taken to have included also the idea, especially in view of his previous transaction with Eisenberg in the

$10,000 loan, that the proceeds of the check would be used by Eisenberg and not merely retained by him for deposit in the corporate account. The validity of what is thus urged can be more sharply tested, I submit, by casting the general proposition in the form of a single question: by whom other than by Eisenberg, and in what manner other than that in which it actually occurred, could plaintiff have reasonably supposed that negotiation of the check would ensue? The vice of the thesis thus declared is that it can be maintained only by the arbitrary exclusion from plaintiff's intent of the very notion that would have been most in keeping with the legal and moral regularities of the situation. There is no contradiction of plaintiff's statement in the depositions that his specific purpose was to have the proceeds go to the corporation and definitely not to Eisenberg, plaintiff at the same time giving his own reasons therefor, the sufficiency of which he alone had the right to judge. Also, why is it not entirely legitimate to infer, for the very reason that "there was no one with express authority to negotiate the check," that plaintiff intended the check should be kept until there was? But in any case, how can such questions as these, questions of what plaintiff supposed or intended, and of what his reasons were, all indisputably questions of fact, be decided by way of a summary judgment?

Plaintiff also explains in the depositions that the corporate organization was soon to be completed, and that it awaited only the submission of an accountant's report. I quote from his testimony:

"Q. As a matter of fact when the $5,000 was loaned were you particular in seeing that the $5,000 actually went to the corporation? A. Definitely. Q. Why? A. Because the corporation was the body that was receiving this loan as disassociated from Shepard Eisenberg who had received the previous loan, which was for a separate purpose. Shepard Eisenberg received $10,000 to effect a dissolution of the partnership between himself and Jager. That loan was to finance the corporation * * *."

On the present motion this testimony must be taken as true. *Savarese v. Pyrene Mfg. Co.*, 9 N. J. 595, 599 (1952). There

thus appears at least one articulate answer to defendants' argumentative question as to what plaintiff could possibly have supposed. Taking plaintiff's word for it, as we are obliged to do, he supposed that the check would in due course be deposited to the credit of the named payee. We are certainly not obliged to assume, as defendants virtually ask, that it was somehow within the design of plaintiff's issuance of the check that Eisenberg's course with it be facilitated— as the third-party defendant's failure of inquiry seems to have done—so as to enhance the convenience of Eisenberg in diverting the proceeds to his own purpose, that being the disposition that was made of them so far as can be said at this time.

As for Eisenberg's signing of the corporate note in the transaction of the previous loan to himself, that could not possibly have conferred upon him authority to appropriate corporate funds to himself. The corporation, by virtue of Eisenberg's signature became, at most, accommodation maker, but as already pointed out, this was entirely at the demand of the lenders. Eisenberg was not acting at the instance of the corporation.

The next point is that plaintiff "well knew that Eisenberg was the beneficial owner of all the corporate stock." This is based upon what the depositions show to have been an assignment for the benefit of creditors, executed by Eisenberg individually and as equitable owner of the stock. For one thing. it appears that plaintiff did not represent Eisenberg in this transaction, and for another that the issuance of the check here in question occurred months before. Defendants say also that plaintiff's conduct in having Eisenberg execute the $10,000 note on the corporation's behalf was "recognition" of Eisenberg's full ownership. Plaintiff's determination at that time to get for his client all the security he could, whatever its worth (which is the way he tells it in the deposition), could certainly create no equities in Eisenberg upon which to predicate any "recognition" by plaintiff. Authority to sign notes may be regarded as authority to bind the

corporation in the ordinary course of its business, but what Eisenberg did with the corporation's check in the instant matter was not in the ordinary course of the corporate business, so far as it has been possible to learn thus far. See *Slavin v. Passaic Natl. Bank & Trust Co.*, 114 *N. J. L.* 341 (*E. & A.* 1935); *Singer Sewing Machine Co. v. Citizens Natl. Bank & Trust Co.*, 111 *N. J. L.* 199 (*Sup. Ct.* 1933), affirmed 112 *N. J. L.* 497 (*E. & A.* 1934).

Defendants rely also on *R. S.* 7:2–61 which reads: "The drawer by drawing the instrument admits the existence of the payee and his then capacity to indorse * * *," and they contend that "under this statute the plaintiff warranted the corporate capacity to endorse." Even if it be admitted that Eisenberg had capacity to endorse, what then? The statement of the Supreme Court in the *Singer* case, *supra* (at *p.* 201), is here appropriate:

"Assuming, but not deciding, that the presence of Werner's name along with the corporation's name, as payee, required his indorsement or gave him the authority to indorse, for the corporation, yet it was incumbent upon the defendant bank to make inquiry of Werner's authority in applying the funds to his personal account."

And the details in the *Singer* case with respect to the particulars of the check and its endorsements present here a well-nigh perfect parallel.

Cited in this court's original opinion is the case of *Callaway v. Hamilton National Bank of Washington*, 90 *U. S. App. D. C.* 228, 195 *F. 2d* 556 (*Ct. App. D. C. Cir.* 1952), on the accountability of banks in the matter of unauthorized endorsements made contrary to the tenor of instruments presented, the same case being authority also on a number of other disputed points. At any rate, what defendants now assert is that a closer examination of the *Callaway* decision reveals it to be strong support for their position. I cannot agree. The first three checks in that case were issued separately and at intervals. The earliest was issued to the order of the corporation at a time when the maker knew it to be

non-existent. The second and third checks were issued before the corporation had become *de jure,* though at a time when the maker had reason to believe otherwise. The court held that the suit could not be maintained on the first check but that it could be on the other two. The diverse ruling was based on these respective grounds, *viz.,* that the first check had been issued to a payee known by the maker to be fictitious, while the other two checks were free of that defect. The defendants urge an analogy between the check *sub judice* and the first of the three checks in the *Callaway* case, the ground of comparison being the knowledge of the respective drawers. There the articles of incorporation were not filed until after all three checks had been issued. There is simply no basis for analogy between the two situations.

Defendants claim the right to pierce the corporate veil and thus to show that Eisenberg was in fact acting as his own agent and not for the corporation, citing *Brooklyn Trust Co. v. Podvin,* 14 *N. J. Super.* 470, 477 (*Ch. Div.* 1951), and *Telis v. Telis,* 132 *N. J. Eq.* 25–9 (*E. & A.* 1942). The answer to this is that for an immediate and substantial reason we do not have here a proper case for invoking the doctrine in point. There is no proof here to aid the justification of summary judgment that either Silver or Eisenberg perpetrated or attempted any fraud under the corporate guise. In *Frank v. Frank's, Inc.,* 9 *N. J.* 218, at 223 (1952), Vanderbilt, C. J., said: "It is absence of fraud as to the plaintiff that most clearly distinguishes the case at bar from the *Telis* case." (*Supra.*) In *Manufacturers' Trust Co. v. Podvin,* 10 *N. J.* 199 (1952), the corporate veil was not pierced, the precise ruling being that the corporate nominee of an insane person could not validly act where the insane person could not.

The basic contention of defendants is for estoppel, and what the court has already said on that subject is probably sufficient. However, there developed on the reargument a feature that may shed further light. With respect to the essence of his contention under this head counsel made what

I conceive to be an admission, by describing his thought on the point to be such that he found it "difficult to categorize"; and upon being questioned by the court suggested that possibly the subject of his argument might be thought of as "*quasi*-estoppel." Well, there are two things which appear to the court to have obvious and conclusive bearing here. One is that the plaintiff is either subject to estoppel or he is not; that is to say, we are not to accomplish the same result by compromise or invention. The other is that if counsel is dealing here with a principle whose elements must be regarded as *quasi*, or with one for which there is no clear category in estoppel, it plainly follows that he is not dealing with estoppel. Estoppel is absolute in its operation and is, perforce, grounded in facts just as absolute in their compulsion. The nature and quality of such facts are too well understood to require discussion. The bank of deposit here had no previous notion of the least circumstance relating to the check's issuance, could not possibly have been influenced by anything of the sort, and is thus in no position to claim reliance thereon. The opportunism of hindsight is repugnant to the theory of estoppel. The absence of estoppel for a similar reason is observed by the court in the *Callaway* case, *supra*.

We come now to what may have been from the very beginning the cause of all the trouble, the similarity between the corporate title of the payee and the designation of Eisenberg's tradename account. Allusion to this makes its appearance for the first time and it is given reference enough to be argumentative. However, regardless of the excuse which this detail in the evidence may or may not afford for the bank's failure to inquire, it presents nothing that can be decided on this motion. It is another question of fact.

It is, of course, true as defendant urges that the bank is not answerable for "subsequent misappropriation," where one is authorized to endorse. Defendants cite the case of *Harry M. Lasker v. Mutual Bank of Roseville*, 201 *App. Div.* 333, 194 *N. Y. S.* 381 (*App. Div.* 1922). The authority to

endorse is the very thing in question here, in addition to which "subsequent misappropriation" is not what concerns us, at least not yet. It is the actual implementation by the third-party defendant, in default of its requisite inquiry, of the immediate diversion by Eisenberg—or his misappropriation, for all that presently appears—of the check proceeds into Eisenberg's personal account. *Cf. Singer v. Bank, supra.*

Defendants would argue also for an analogy with the provisions of *N. J. S.* 3*A*:41–9, a section of the Uniform Fiduciaries Law. But there is no analogy. The conditions presupposed by that section and those inherent in the instant facts are totally different in kind. Certainly there is nothing that overcomes the pertinent ruling in the *Singer* case, *supra*.

█ I think it worth repeating that a summary judgment is not to be awarded on grounds less than palpable. *Rules* 5:2–1, 3:56–3. I judge the grounds that are submitted to be in their legal aspect well below such required standard, and factually, of course, to be inadmissible.

The court's decision denying the motion will remain unchanged.