[No. 11925-1-II.  Division Two.  February 12, 1990.]

PUGET SOUND NATIONAL BANK, *Respondent*, v. DAVID V. BURT, ET AL, *Appellants*.

*Shawn B. Briggs* and *Briggs & Briggs*, for appellants.

*Robert G. Casey* and *Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn*, for respondent.

BAKER, J.*—David Burt appeals from summary judgment on the claim of Puget Sound National Bank (PSNB) for breach of a customer warranty. Roberta Ward and Lee Adams were married in 1951. In 1967, Adams executed a general power of attorney authorizing his wife to sign his name and to transact business on his behalf. In April 1981, a decree of divorce was granted to Ward; Adams was

---

*This appeal was heard by a Court of Appeals Judge, together with two retired Superior Court Judges sitting as Court of Appeals Judges Pro Tempore in Division Two, pursuant to CAR 21(c).

awarded, as his separate property, life insurance on himself. The final decree of dissolution was entered on July 26, 1982, after several earlier amendments to the April 1981 decree. At no time did the Idaho court alter the provision that awarded the life insurance to Adams.

In May 1981, Ward obtained two checks from New York Life Insurance Company on Adams' life insurance policy. One check was a dividend; the other check represented a portion of the policy's cash surrender value. Defendants have adduced evidence that Ward then contacted the Oregon attorney who had drafted the power of attorney in 1967 and that the Oregon attorney advised that the power of attorney was still valid. Defendants have also adduced evidence that Ward consulted both an Idaho attorney and a representative of New York Life, both of whom advised that Ward could sign Adams' name to the checks.

Burt, whom Ward subsequently married, authorized Ward to sign his name to the checks and then deposit them in his account at PSNB. Defendants have adduced evidence that Burt agreed to accept the checks in exchange for food, living expenses, and the use of a motorhome, and that Burt so agreed in reliance upon the assurances that Ward had earlier received to the effect that she retained authority as an attorney in fact to sign Adams' name to the checks.

Ward signed both Adams' and Burt's names to the checks and deposited them in Burt's account. In about June or July of 1981, Adams became aware that Ward had signed his name to the checks. In June 1983, Adams filed an affidavit of forgery, and PSNB refunded the amount of the two checks to Adams.

PSNB sued Burt for breach of his customer warranties, and Adams and Ward were impleaded as third party defendants. In deciding opposing motions for summary judgment, the trial court concluded that Burt breached his customer warranties. On appeal, the parties have limited their arguments to the Article 4 warranties of the Uniform Commercial Code. We limit our holding accordingly and reverse.

The customer of a bank undertakes certain obligations when depositing a check to the customer's account:

Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his transferee and to any subsequent collecting bank who takes the item in good faith that

(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and

(b) all signatures are genuine or authorized; and

(c) the item has not been materially altered; and

(d) no defense of any party is good against him; and

(e) he has no knowledge of any insolvency proceeding instituted with respect to the maker or acceptor or the drawer of an unaccepted item.

RCW 62A.4–207(2).

■ PSNB contends that Adams' signature was neither genuine nor authorized. We disagree. "'Unauthorized' signature or indorsement means one made without actual, implied or apparent authority and includes a forgery." RCW 62A.1–201(43). Ward had actual authority to sign Adams' name to the two checks because Adams had executed and recorded a general power of attorney that designated Ward as his attorney in fact and because that general power of attorney had not been revoked.[1] Ward's divorce from Adams was not by itself sufficient to revoke the power of attorney that Adams had executed in favor of Ward. *See Woodman v. Fitzsimmons,* 120 Wash. 136, 137–38, 206 P. 963 (1922).

PSNB argues that Burt nonetheless is strictly liable on his customer warranty, while Burt argues that he reasonably relied upon the existence of the power of attorney and various opinions as to its continuing validity. We need not

---

[1]Washington and Oregon have similar statutes on the subject of the revocation of a power of attorney that has been recorded. *Compare* RCW 65.08.130 *with* Or. Rev. Stat. § 93.670.

No letter of attorney, or other instrument so recorded, is deemed to be revoked by any act of the party by whom it was executed unless the instrument containing such revocation is also recorded in the same office in which the instrument containing the power was recorded.

Or. Rev. Stat. § 93.670(2) (1989).

decide this issue because we have concluded that Ward's signature of Adams' name was authorized. Only if the power of attorney had been revoked would it be necessary to decide if a customer is strictly liable under the customer's Article 4 warranties.

From the facts of this case, it appears that Ward breached her fiduciary duty to Adams when she misappropriated Adams' money. Ward's unauthorized act of misappropriation, however, does not render unauthorized other acts which Adams had expressly authorized, such as the signing of his name. As between Burt and PSNB, there was no breach of Burt's Article 4 warranties. Accordingly, we reverse and remand with instructions to enter summary judgment for Burt, along with an award of reasonable attorneys' fees:

> Notwithstanding any other provisions of chapter 4.84 RCW and RCW 12.20.060, in any action for damages where the amount pleaded by the prevailing party as hereinafter defined, exclusive of costs, is seven thousand five hundred dollars or less, there shall be taxed and allowed to the prevailing party as a part of the costs of the action a reasonable amount to be fixed by the court as attorneys' fees. After July 1, 1985, the maximum amount of the pleading under this section shall be ten thousand dollars.

RCW 4.84.250. Because PSNB recovers nothing, Burt is the prevailing party. RCW 4.84.270. Burt is also entitled to attorneys' fees on appeal:

> If the case is appealed, the prevailing party on appeal shall be considered the prevailing party for the purpose of applying the provisions of RCW 4.84.250: *Provided,* That if, on appeal, a retrial is ordered, the court ordering the retrial shall designate the prevailing party, if any, for the purpose of applying the provisions of RCW 4.84.250.
>
> In addition, if the prevailing party on appeal would be entitled to attorneys' fees under the provisions of RCW 4.84.250, the court deciding the appeal shall allow to the prevailing party such additional amount as the court shall adjudge reasonable as attorneys' fees for the appeal.

RCW 4.84.290. These statutes have been interpreted to recognize a right to attorneys' fees on appeal. *Valley v.*

*Hand,* 38 Wn. App. 170, 684 P.2d 1341, *review denied,* 103 Wn.2d 1006 (1984).

Burt, who has complied with RAP 18.1, asks for an award of $2,990 for attorneys' fees on appeal. We conclude that this amount is not reasonable in light of an amount in controversy of less than $2,500. We conclude, in light of the circumstances of this case, that $1,750 is a reasonable attorney fee on appeal. It is so ordered.

Reversed and remanded.

ALEXANDER, C.J., and LANGSDORF, J. Pro Tem., concur.

Reconsideration denied June 22, 1990.