841 A.2d 496 (2004)
366 N.J. Super. 431
Clifford N. KUHN, Jr., and Touch of Class Limousine Service, L.L.C., d/b/a Touch of Elegance Limousine Service, Plaintiffs-Appellants,
v.
Joseph M. TUMMINELLI, Joanne Tumminelli, Quick Cash, Inc., Chase Manhattan Bank, N.A., First Union National Bank, N.A. (succeeded by Wachovia Bank), and Bank of America Corporation, Defendants-Respondents, and
Quick Cash, Inc., Third-Party Plaintiff-Respondent,
v.
Joseph Tumminelli, Joanne Tumminelli, Chase Manhattan Bank, N.A., First Union National Bank, N.A. (succeeded by Wachovia Bank), and Bank of America Corporation, Third-Party Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 6, 2004.
Decided February 11, 2004.
*498 David B. Rubin, Metuchen, argued the cause for appellants.
Glenn C. Slavin, argued the cause for respondent Quick Cash, Inc. (Slavin & Morse, attorneys; Mr. Slavin, on the brief).
Jodi L. Rosenberg, Woodbridge, argued the cause for respondents Wachovia Bank and Bank of America (Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, attorneys; Ms. Rosenberg, on the brief).
Marguerite M. Schaffer, Bernardsville, argued the cause for respondent J.P. Morgan Chase Bank (Shain, Schaffer & Rafanello, attorneys; Ms. Schaffer, on the brief).
Before Judges STERN, A.A. RODRÍGUEZ and LEFELT.
*497 The opinion of the court was delivered by LEFELT, J.A.D.
Plaintiff Clifford Kuhn, Jr., a practicing attorney, and defendant Joseph Tumminelli formed Touch of Class Limousine Service under the New Jersey Limited Liability Company Act, N.J.S.A. 42:2B-1 to -70, doing business as Touch of Elegance Limousine Service. The parties orally agreed that Kuhn would provide the financial backing and procure customers, and Tumminelli would generally manage the business and operate the company day-to-day. Unfortunately, however, Tuminelli embezzled[1] funds from the company after cashing customers' checks at defendant Quick Cash, Inc, a local check cashing service operating under The Check Cashers Regulatory Act of 1993, N.J.S.A. 17:15A-30 to -52.
After cashing the checks for Tumminelli, Quick Cash deposited the checks in its bank account with defendant First Union National Bank, N.A. [now Wachovia Bank] and First Union collected on the checks from the drawee banks, defendants Bank of America Corp. and Chase Manhattan Bank, N.A. [now J.P. Morgan Chase Bank].
Kuhn obtained a judgment against Tumminelli for the embezzled funds, but now appeals from Judge Ann McCormick's summary judgment in favor of all remaining defendants, which concluded that because Tumminelli was authorized to endorse the checks, none of the remaining defendants were liable to Kuhn. Kuhn claims that because Tumminelli did not have authority to convert the company's cash to his own use, summary judgment was granted erroneously as there were genuine issues of material fact regarding the scope of Tumminelli's check cashing authority under common law agency principles. We conclude that Judge McCormick correctly awarded defendants summary judgment and affirm.

*499 I.
Here are the facts followed by the relevant procedural history. Kuhn and Tumminelli each owned a half-interest in the limousine service company, which began as a partnership in 1999 and soon became a Limited Liability Company (LLC), with Kuhn and Tumminelli as members. Kuhn and Tumminelli never entered into a written operating agreement, but they orally agreed to various operating procedures, including an understanding that while Tumminelli could receive customer payments all such monies should pass through the appropriate company bank accounts and be accounted for properly.
The LLC leased several limousines, hired two full-time drivers, and served corporate customers in the area, such as Merck & Co. in Rahway. Kuhn and Tumminelli were authorized signatories on the LLC's only checking account. Beginning in late 1999, Kuhn became aware of shortages in the checking account along with returned checks and other irregularities in the operation of the LLC. Kuhn discovered as early as January 2000 that "Tumminelli had written several checks to `cash,' signed the checks personally, and cashed them at Quick Cash." Kuhn confronted Tumminelli who tried to explain the irregularities, but by February 2001, Kuhn had concluded that Tumminelli had been embezzling LLC money by cashing customers' checks payable to the LLC at Quick Cash based on Tumminelli's personal endorsement and converting the proceeds to his personal use.
Nevertheless, Kuhn allowed Tumminelli to continue receiving company payments and to manage company funds after Kuhn's suspicions were aroused in January 2000 until June 2001, when Kuhn brought suit against Tumminelli. The record discloses that Kuhn did nothing to take control of the finances or otherwise protect the company assets during this period and merely instructed Tumminelli to not expend company money without discussing it with him. Kuhn never, during this period, attempted to enforce the instruction. Significantly, Kuhn also did not notify Quick Cash of his concerns regarding Tumminelli at any time during this period.
Before Tumminelli cashed any checks at Quick Cash, Tumminelli presented Quick Cash with a form corporate resolution provided by Quick Cash, signed by Tumminelli as Secretary and President, purporting to authorize him to cash checks on the company's behalf under his personal signature. The resolution, however, was not notarized and contained neither the date it was executed nor a corporate seal. In addition, Tumminelli had presented Quick Cash with two letters on LLC letterhead to the same effect, which Tumminelli had signed as General Partner. After receiving the two letters and resolution, an owner and officer of Quick Cash called the LLC offices and spoke with Mrs. Tumminelli, who helped in the day-to-day management of the business and maintained the company books and records. Mrs. Tumminelli informed Quick Cash that Tumminelli was an owner of the company.[2] And, before cashing each check presented by Tumminelli, Quick Check also verified Tumminelli's identity by "taking [his] driver's license and photocopying [it] against the check presented."
*500 Kuhn sued Tumminelli, Tumminelli's wife, and Quick Cash in the Chancery Division, accusing the Tumminellis of embezzlement and conversion and charging Quick Cash with negligence for failing to comply with statutory check-cashing procedures. The Chancery judge restrained the Tumminellis from any further involvement with the LLC, entered a $280,000 judgment against Tumminelli, and ordered the transfer of Tumminelli's ownership interest to Kuhn. The remaining claims against Quick Cash were transferred to the Law Division and assigned to Judge McCormick.
Quick Cash denied negligence and asserted third-party claims for indemnification against the Tumminellis, First Union and the drawee banks, Bank of America and Chase. The bank defendants cross-claimed against each other and against Quick Cash for indemnification. Kuhn then amended his complaint to assert direct claims of conversion and negligence against each of the banks.
Quick Cash and each of the defendant banks moved for summary judgment on the ground that Tumminelli's endorsements were authorized. Judge McCormick granted the motion because she concluded that Tumminelli was authorized to endorse the checks and that his subsequent dishonesty defrauded Kuhn and the LLC, but was not the responsibility of Quick Cash or any of the banks.
The judge found that there was "no dispute that Mr. Tumminelli was a 50% member and Mr. Kuhn was a 50% member [of the LLC].... There not being [a written] operating agreement[,] the powers, duties, and responsibilities of the members of the LLC defaulted to the Statute." Under the judge's interpretation of the LLC statute, Tumminelli had the "power to endorse, to enter into simple contracts, to sign checks, etc." Because Tumminelli's signature was authorized by the LLC, according to Judge McCormick "that is the end of the story and the bank is not responsible for a subsequent conversion of the funds by the person endorsing the check."

II.
Kuhn argues on appeal that Tumminelli's endorsement was unauthorized because Tumminelli used the funds for personal purposes. Reasoning from out-of-state cases and the Uniform Partnership Act provision limiting partner authorization to partnership business, N.J.S.A. 42:1A-13(a), Kuhn argues that because Tumminelli was not authorized by the LLC to convert company funds to his own use, there was minimally a factual dispute regarding whether Tumminelli was authorized to endorse the company checks he subsequently converted. We do not agree with the legal construct Kuhn attempts to erect in order to find a factual dispute.
New Jersey enacted the Limited Liability Company Act in 1994. L. 1993, c. 210, § 1 to § 70 (eff. Jan. 26, 1994). Its purpose was to enable members and managers of LLCs "to take advantage of both the limited liability afforded to shareholders and directors of corporations and the pass through tax advantages available to partnerships." Senate Commerce Committee Statement, S. Doc. No. 890, at 1 (June 14, 1993).
Under the LLC Act, when "a limited liability company is managed by its members, unless otherwise provided in the operating agreement, each member shall have the authority to bind the limited liability company." N.J.S.A. 42:2B-27(b)(1). Moreover, "[e]xcept as otherwise provided in an operating agreement, a member or manager may lend money to, borrow money from, act as a surety, guarantor or *501 endorser for, ... [an LLC]." N.J.S.A. 42:2B-9 (emphasis added).
In the absence of a written operating agreement providing to the contrary, Tumminelli as a 50% owner of the LLC had broad authority to bind the LLC under N.J.S.A. 42:2B-27(b)(1), and specific authority under N.J.S.A. 42:2B-9 to "endorse" and presumably cash checks payable to the LLC. If more limited authority was desired, Kuhn and Tumminelli had to so provide in a written operating agreement.
We see no indication that the Legislature intended to incorporate any provision of the Uniform Partnership Act into the LLC law. The broad grant of authority to LLC members contained in N.J.S.A. 42:2B-27(b)(1), was added to the statute by the Legislature in 1997. L. 1997, c. 139, § 15. The Uniform Partnership Law, which preceded the Uniform Partnership Act, and has been in existence since 1919, contained a provision limiting a partner's authority to partnership business, which was nearly identical to N.J.S.A. 42:1A-13(a), contained in the current Uniform Partnership Act. N.J.S.A. 42:1-9 (repealed by L. 2000, c. 161, § 59). Therefore, when the LLC law was amended in 1997 to provide the broad grant of authority to LLC members, limitations contained in the partnership law could have been adopted, but were not.
Instead, the LLC Act contemplates that its provisions will control unless the members agree otherwise in an operating agreement. When executing an operating agreement, which must be written if the LLC has more than one member, N.J.S.A. 42:2B-2, the members are free to structure the company in a variety of ways and are free to restrict and expand the rights, responsibilities and authority of its managers and members. E.g., N.J.S.A. 42:2B-27(b)(1) (permitting the limitation of a members' authority and the designation of a manager and the detailing of company affairs); N.J.S.A. 42:2B-10 (permitting limitless indemnification and hold harmless provision for members and managers); N.J.S.A. 42:2B-22 (permitting the detailing of "relative rights, powers and duties" of "classes or groups of members"); N.J.S.A. 42:2B-25 (permitting the limitation of company information available to each member); N.J.S.A. 42:2B-28 and N.J.S.A. 42:2B-66 (permitting the establishment of restrictions and liabilities of members and managers); N.J.S.A. 42:2B-34 to -35 (permitting the specification of distributions among the members); N.J.S.A. 42:2B-37 (permitting the delineation of when and how a manager should resign).
The LLC Act is, therefore, quite flexible and permits the LLC members great discretion to establish the company structure and procedures, with the statute controlling in the absence of a contrary operating agreement. The legislative intent is revealed by the directive that the LLC Act is "to be liberally construed to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements." N.J.S.A. 42:2B-66(a).

III.
Tumminelli was authorized under the LLC Act to endorse the checks. In fact, considering Tumminelli's position at the LLC, his responsibilities, and daily functions along with the statutory grant of authority, it can be inferred that Tumminelli had actual authority to receive the checks, endorse the checks, and cash them at Quick Cash, especially because Kuhn knew that Tumminelli was paying business expenses in cash.
Kuhn nevertheless argues that the endorsement and subsequent conversion constitutes *502 one act. Under Kuhn's argument, even if a person had been authorized to endorse and cash a check, if that person converts the funds to an unauthorized use, a depository bank would be liable, as if the check had been paid on a forged endorsement. Kuhn relies on several out-of-state cases as support for this argument. E.g., Lund's, Inc. v. Chem. Bank, 870 F.2d 840, 848-49 (2nd Cir.1989); Taco Ed's, Inc. v. State Bank and Trust, 63 B.R. 913, 933-34 (Bankr.N.D.Ohio 1986); Oswald Mach. & Equip., Inc. v. Yip, 10 Cal.App. 4th 1238, 13 Cal.Rptr.2d 193, 194-95 (1992); Trust Co. Bank of Augusta v. Henderson, 185 Ga.App. 367, 364 S.E.2d 289, 291 (1987); Nat'l Bank of Monticello v. Quinn, 126 Ill.2d 129, 127 Ill.Dec. 764, 533 N.E.2d 846, 847-48 (1989); Mohr v. State Bank of Stanley, 241 Kan. 42, 734 P.2d 1071, 1076-77 (1987); Confederate Welding & Safety Supply, Inc. v. Bank of Mid-South, 458 So.2d 1370 (La.Ct.App.1984); Delta Chem. v. Citizens Bank, 790 So.2d 862, 865-66, 873 (Miss.App.2001).
We disagree that an authorized endorsement can become unauthorized by a subsequent unauthorized use of the funds. Rather, we view the circumstances as constituting two acts, the endorsement necessary to obtain the funds and the subsequent use of the funds. These acts are not inseparable. The misappropriation of the funds is unauthorized, but does not convert an authorized endorsement into a forgery. Jones v. Van Norman, 513 Pa. 572, 522 A.2d 503, 507(Pa.), appeal denied, 515 Pa. 581, 527 A.2d 542 (1987).
"It defies reason to allow an event that occurs after the indorsement to affect the validity of the indorsement." Citizens Bank of Md. v. Md. Indus. Finishing Co., 338 Md. 448, 659 A.2d 313, 315-16 (1995); Willey v. Mayer, 876 P.2d 1260, 1265 (Co.1994); Bank South v. Midstates Group, Inc., 185 Ga.App. 342, 364 S.E.2d 58, 61 (1987); Rohrbacher v. BancOhio Nat'l Bank, 171 A.D.2d 533, 534, 567 N.Y.S.2d 431 (N.Y.App.Div.1991); Puget Sound Nat'l Bank v. Burt, 56 Wash.App. 868, 786 P.2d 300, 302 (1990). "The use to which the agent later puts the check does not affect the agent's authorization to indorse it." Citizens Bank of Md., supra, 659 A.2d at 318. "[T]he validity of an indorsement does not depend upon the agent's subjective motivation at the time of the indorsement." Id. at 319. We have years ago explained that a valid corporate resolution explicitly conferring authority on an officer to endorse checks was sufficient to excuse a bank from inquiring further into the validity of the underlying transaction. O'Connor v. First Bank & Trust Co., 12 N.J.Super. 281, 289-90, 79 A.2d 687 (App.Div.1951). As Judge McCormick stated "how can a bank or anyone else protect themselves against someone's bad intent[?]"
"If the agent is otherwise authorized ... the fact that the agent had an improper purpose in making or endorsing the instrument in the authorized form does not prevent a bona fide purchaser in due course, or a subsequent transferee from one, from having the same rights in the instrument and against the principal as if the agent's act were authorized." Restatement (Second) of Agency § 76 comment. c (1958); see also Restatement (Second) of Agency § 165 comment d (1958) (dealing with a principal's liability to third parties where its agent acts with an improper purpose and recognizing liability when "an agent, authorized to ... endorse checks ... endorses one to a named payee or endorsee, intending to simulate the name of a creditor of the principal and embezzle the proceeds"); Restatement (Second) of Agency § 173 comment a (1958) (a principal who employs a general agent "in a position in which it is usual for such agents to issue *503 negotiable instruments" is liable to a holder in due course of such an instrument issued by the agent in the name of the principal, even where the agent acted contrary to the principal's directions and the holder in due course was unaware of the agency relationship).

IV.
Despite the proof that Tumminelli had actual authority to endorse the checks in question, Kuhn still argues that Quick Cash could not reasonably have concluded that Tumminelli was authorized to endorse the checks because the documentation that Tumminelli submitted to establish his authorization was defective. Specifically, Kuhn argues that Quick Cash was negligent because the corporate resolution submitted by Tumminelli was prepared on a Quick Cash form in which Tumminelli had omitted the date the resolution was approved and the date the form was certified. In addition, the form lacked a corporate seal and notarization.
As a check cashing entity, Quick Cash is licensed and regulated and must adhere to the provisions of The Check Cashers Regulatory Act of 1993. N.J.S.A. 17:15A-30 to -52. This statute provides in pertinent part that an entity such as Quick Cash is not permitted to "[c]ash a check which is made payable to a payee which is other than a natural person unless the licensee has on file a corporate resolution or other appropriate documentation indicating that the corporation, partnership or other entity has authorized the presentment of a check on its behalf and the federal taxpayer identification number of the corporation, partnership or other entity." N.J.S.A. 17:15A-47(a). Kuhn argues that the partially executed corporate resolution that Tumminelli presented to Quick Cash was insufficient under the statute.
The check cashing statute, however, permits authorization to be established by "other appropriate documentation" besides a corporate resolution. N.J.S.A. 17:15A-47(a). Here, the undisputed facts reveal that Tumminelli presented Quick Cash with a partially executed corporate resolution containing the LLC's tax identification number, and two letters on LLC letterhead, all granting Tumminelli authority to endorse and cash corporate checks under his own signature. Both of the letters Tumminelli provided Quick Cash noted that Tumminelli was a "General Partner ... authorized to endorse and/or cash checks made payable to [the LLC]." The letters authorized Quick Cash "to cash all checks and drafts payable to the order of [the LLC], endorsed by [Tumminelli's] personal signature alone so that the [LLC] may obtain said funds which it needs immediately." In addition, Quick Cash verified Tumminelli's identity each time he cashed a check and made a photocopy of the identification provided.
We believe that the documentation obtained by Quick Cash was appropriate to establish Tumminelli's authorization. To have required more in this case would have been commercially unreasonable. Even if a properly executed corporate resolution was required by Quick Cash, for example, Tumminelli could have easily provided such a resolution because he was a 50 percent owner, a member, and general manager of the LLC.
Kuhn also argues that Quick Cash should have been alerted by Tumminelli's actual endorsement. When endorsing each check, Tumminelli signed only his name and did not indicate that he was endorsing the check on behalf of the LLC.
We do not believe that by signing only his name the endorsement was invalidated, for three reasons: first, N.J.S.A. 12A:3-402(a) provides in part that "[i]f a *504 person acting, or purporting to act, as a representative signs an instrument by signing either the name of the represented person or the name of the signer, the represented person is bound by the signature to the same extent the represented person would be bound if the signature were on a simple contract." In other words, "[i]f under the law of agency the represented person [here the LLC] would be bound by the act of the representative [here Tumminelli] in signing either the name of the represented person or that of the representative, the signature is the authorized signature of the represented person." N.J.S.A. 12A:3-402 (Uniform Commercial Code Comment 1 on § 3-402 (1995)). By signing only his name, Tumminelli as the representative of the LLC also bound the LLC and could receive payment on behalf of himself and the LLC.
Second, because of Tumminelli's high ranking position with the LLC, if Quick Cash had asked Tumminelli to endorse the name of the LLC or state that he was signing on behalf of the LLC, Tumminelli could have easily endorsed in this fashion and still have been able to convert the funds to his own purposes.
Third, even if Tumminelli did not have actual authority to endorse LLC checks, the documents he provided Quick Cash established apparent authority. N.J.S.A. 12A:1-201(43). "Apparent authority imposes liability on the principal not as a result of an actual contractual relationship, but because the principal's actions have misled a third-party into believing that a relationship of authority in fact exists." Mercer v. Weyerhaeuser Co., 324 N.J.Super. 290, 317, 735 A.2d 576, 592 (App.Div.1999). As one of the owners of the LLC and its general manager, Tumminelli had apparent authority to endorse business checks and was placed in this position by the LLC and Kuhn. It was not unreasonable for Quick Cash to rely on Tumminelli's apparent authority. Consequently, by cashing the check, Quick Cash became a person entitled to enforce and receive payment for the instrument and against whom a conversion charge could not be successful. N.J.S.A. 12A:3-420(a).

V.
Regarding First Union, Judge McCormick determined that this bank was the depository bank for the transactions at issue and no party challenges this conclusion. Any depository bank, under the Uniform Commercial Code, that pays an instrument on a forged or unauthorized endorsement, is strictly liable even if it otherwise acted in a commercially reasonable manner. N.J.S.A. 12A:3-420; Leeds v. Chase Manhattan Bank, 331 N.J.Super. 416, 422-23, 752 A.2d 332, 336 (App.Div. 2001) (citing Uniform Commercial Code, comment 1 on § 3-420 (1995)); Silver v. Commwealth Trust Co. of N.J., 22 N.J.Super. 604, 609, 92 A.2d 152, 154 (Co.Ct., Law Div.1952), opinion adhered to on reargument, 24 N.J.Super. 504, 94 A.2d 880 (Co.Ct., Law Div.1953) (an unauthorized signature is wholly inoperative and equal to a forgery).
The Uniform Commercial Code places responsibility for forged and unauthorized endorsements on depositary banks not only because they are the first solvent entity after the one who forged the endorsement, 2 James J. White & Robert S. Summers, Uniform Commercial Code § 18-4 at 209-10 (4th ed.1995), but also because it follows that the depositary bank is in the best position of any other bank in the negotiation chain to guard against forged or unauthorized endorsements. See N.J.S.A. 12A:3-420(c) (Uniform Commercial Code Comment 3) (explaining that depository banks no longer have the good *505 faith defense because they are ultimately liable to payor banks by the warranty under Section 4-208(a)(1)). That is not the case here.
Here, First Union paid on Quick Cash's stamped endorsement as a licensed check casher after the Tumminelli endorsement. First Union therefore correctly relied on Quick Cash's transfer warranty that Quick Cash was entitled to "enforce" the check and that Tumminelli's endorsement was "authentic and authorized." N.J.S.A. 12A:4-207(a).
Regarding the drawee-payor banks, Chase and Bank of America, they correctly relied on First Union's warranty, under N.J.S.A. 12A:4-208(a)(1), that First Union was entitled to enforce the draft. Furthermore, Kuhn has not provided any reasons to conclude that these banks did not in good faith follow reasonable commercial standards or that further discovery on this issue might be productive. See N.J.S.A. 12A:3-420(c); see also N.J. Lawyers' Fund for Client Protection v. First Fidelity Bank, 303 N.J.Super. 208, 226-27, 696 A.2d 728, 737-38 (App.Div.1997) (discussing the 1995 amendments to N.J.S.A. 12A:3-420).
Accordingly, for the reasons explained above, we conclude that Judge McCormick correctly granted summary judgment to defendants Quick Cash, First Union, Chase, and Bank of America.
Affirmed.
NOTES
[1] There are some facts in the record indicating that Tumminelli may not have embezzled company funds, however a Chancery Judge entered judgment against Tumminelli for $283,000 and ordered Tumminelli to transfer his ownership interest in the company to Kuhn. This judgment and order have not been appealed.
[2] Kuhn argues that we should not rely on the certification establishing the phone contact because discovery had been terminated and he was unable to depose the witness. However, such documentation is permitted by the pertinent rule, R. 4:46-2, and commonly submitted with summary judgment motions. Also, the record, reviewed favorably to Kuhn, does not reveal any suspicion of the certification's unreliability.