845 A.2d 664

HIBERNIA NATIONAL BANK, PLAINTIFF–RESPONDENT, v. COMMERCE BANK, N.A., DEFENDANT–APPELLANT, AND MARCUS L. VAUGHN, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Submitted March 9, 2004—Decided April 2, 2004.

Before Judges ALLEY, PARKER, and COLEMAN.

*Frey, Petrakis, Deeb, Blum, Briggs & Mitts*, attorneys for defendant-appellant (*L. Oliver Frey* and *Steven H. Griffiths*, of counsel and on the brief).

*John G. DeSimone*, attorney for plaintiff-respondent.

The opinion of the court was delivered by

ALLEY, J.A.D.

On November 8, 2000, Otto Candies, LLC (Otto), drew a check on its account at Hibernia National Bank (Hibernia) for $116,419.12, payable to "ENSCO Marine–Offshore–B" (ENSCO–B), a Texas entity. The check was drawn as intended payment due to ENSCO–B for several invoices.

On November 9, 2000, Marcus L. Vaughn opened an account in the name of "Marcus Vaughn d/b/a ENSCO Marine and Offshore Company, Inc." (ENSCO–Marine) at Commerce Bank's Rahway branch (Commerce). As was required for the opening of such an account, Vaughn presented Commerce with copies of his New Jersey driver's license and ATM card, as well as a Certificate of Trade Name for "Marcus Vaughn d/b/a ENSCO Marine and Offshore Company, Inc.," issued by the Clerk of Union County on

November 8, 2000. The payee named on the check, ENSCO–B, is separate from and unrelated to ENSCO–Marine, the trade name utilized by Vaughn.

On November 20, 2000, Vaughn endorsed the check by writing "Marcus L. Vaughn" on the back and deposited it in his Commerce account at that bank's Woodbridge branch. The record does not reflect how Vaughn came into possession of the check, but there is no evidence that this occurred through negligence on the part of either Otto or ENSCO–B. On November 21, 2000, the check was presented to drawee bank Hibernia and was subsequently paid by Hibernia.

On or about February 7, 2001, ENSCO–B verified to Hibernia that it had not received the check. Hibernia then recredited Otto's account in the amount of the missing funds and sought recoupment from Commerce. After Commerce denied Hibernia's request, Hibernia filed its complaint against defendants Commerce and Vaughn on February 19, 2002. On May 9, 2003, Judge John A. Fratto granted summary judgment in favor of Hibernia as to both liability and damages. In essence the judge rejected Commerce's contention that the "impostor" exception provided under *N.J.S.A.* 12A:3–404 [1] entitled it to summary judgment as a matter of law and ruled, as Hibernia asserted, that Commerce breached its presentment warranties under *N.J.S.A.* 12A:4–208 and that the impostor exception is inapplicable. We affirm.

The Uniform Commercial Code (UCC) as in effect in New Jersey provides that a depository bank that has presented a draft for payment to a drawee bank warrants that it was entitled to

---

[1] Under the previous version of UCC Article 3 as enacted in New Jersey, impostor cases were governed by *N.J.S.A.* 12A:3–405(1)(a), fictitious payee cases were governed by *N.J.S.A.* 12A:3–405(1)(b), and fraudulent indorsements by employees were covered under *N.J.S.A.* 12A:3–405(1)(c). In 1995, the Legislature enacted the current versions of *N.J.S.A.* 12A:3–404 and 12A:3–405. Section 12A:3–404 now governs impostor and fictitious payee cases, and section 12A:3–405 pertains solely to the scope of an employer's liability for the conduct of its employees.

payment on behalf of the person authorized to enforce the draft. *N.J.S.A.* 12A:4–208(a)(1); *N.J.S.A.* 12A:3–417(a)(1). *See e.g.,* *Kuhn v. Tumminelli,* 366 *N.J.Super.* 431, 446, 841 *A.*2d 496 (App.Div.2004) (noting that the drawee-payor banks correctly relied on depository bank's warranty that it was entitled to enforce the draft under *N.J.S.A.* 12A:4–208(a)(1)). Subsection (a)(1) of the presentment warranties "in effect is a warranty that there are no unauthorized or missing endorsements." *N.J.S.A.* 12A:3–417 cmt. 2. Section 12A:4–208 provides in pertinent part:

a. If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, the person obtaining payment or acceptance, at the time of presentment, and a previous transferor of the draft, at the time of transfer, warrant to the drawee that pays or accepts the draft in good faith that:

(1) the warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft;

(2) the draft has not been altered; and

(3) the warrantor has no knowledge that the signature of the purported drawer of the draft is unauthorized.

. . . .

c. If a drawee asserts a claim for breach of warranty under subsection a. of this section based on an unauthorized indorsement of the draft or an alteration of the draft, the warrantor may defend by proving that the indorsement is effective under 12A:3–404. . . .

Commerce, however, seeks to invoke the "impostor and/or fictitious payees" defense, *N.J.S.A.* 12A:3–404, which provides in relevant part:

a. If an impostor, by use of the mails or otherwise, induces the issuer of an instrument to issue the instrument to the impostor, or to a person acting in concert with the impostor, by impersonating the payee of the instrument or a person authorized to act for the payee, an indorsement of the instrument by any person in the name of the payee is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

The trial court correctly observed that the central issue was whether section 12A:3–404 was available to Commerce as a defense for breach of its presentment warranty under section 12A:4–208. It began its analysis by recognizing the UCC rule that a drawee bank can shift its loss on a forged check upstream to the depository bank, citing *Guardian Life Ins. Co. of Am. v. Weis-*

*man,* 30 *F.Supp.*2d 720, 723 (D.N.J.1998), *rev'd on other grounds,* 223 *F.*3d 229 (3d Cir.2000). In reviewing whether any of the defenses in section 12A:3–404 were available to Commerce, Judge Fratto stated:

> In analyzing the transaction at issue we know first that the payee on the check ENSCO Marine Company–B is not a fictitious payee. They're an active company maintaining offices in Dallas, Texas and the check was made out by Otto to a properly named payee and indeed it indicated on its face ENSCO Marine Company B, Dallas, Texas. In that regard Paragraph (b) of 12A:3–404 is not applicable. And while Paragraph (a) may appear to apply as used in that paragraph Marcus Vaughn I find was not an impostor. Vaughn did not induce Otto to issue the check to Vaughn or to ENSCO Marine and Offshore Co. The payee on the instrument was ENSCO Marine Offshore–B. He did not hold himself out as being ENSCO ... Marine Company–B nor did he hold himself out as acting for ENSCO Marine Company–B. He did not impersonate ... ENSCO Marine Company–B nor did he endorse the instrument in the name of ENSCO Marine Company–B.
>
> Instead, he endorsed the instrument in his own name and deposited it into his own account. The endorsement Marcus Vaughn on the back of the check is not the name of ENSCO Marine Company–B.

The judge also rejected the argument by Commerce that its position was supported by the example in case # 4 in the Official Comment to section 12A:3–404, observing:

> That case I think is distinguishable. In that case a thief gained access to the computer and caused a check to be written to a non-existing company, Supplier Co. He then endorsed the check in the name of Supplier Co. and deposited it into an account in the depository bank in the name of Supplier Co. In effect, although he did it by gaining access to the computer it's the same as if he hoodwinked or induced the maker to issue the check to his company Supplier Co.
>
> In the instant case the check in question was not made to a non-existent company but was made to a proper operating identity—entity rather. Further, the check was not endorsed in the name of the proper entity but was endorsed in the name of Marcus Vaughn.
>
> As stated in the cited cases for policy reasons the review of endorsement should take place at the depository bank which is most likely to have the information available to verify such endorsements, and is in the best position to prevent fraudulent endorsements. A cursory examination of the check I think would have disclosed that it was made to a different entity and Mr. Vaughn's company which was purportedly registered in New Jersey and was payable to a company in Dallas, and it was written before Vaughn opened the account. All things which may be explainable but which may be or should be red flags to the depository ... bank.
>
> I specifically find that Vaughn did not induce Otto to issue the check to him or to his company. I find that Vaughn did not impersonate ENSCO Marine Company–B

and that the impostor fictitious payee ... statute defense to the warranties does not apply.

We have carefully considered, in light of the record and the applicable law, each of the contentions on appeal, and because we are satisfied that the decisional rationale set forth by Judge Fratto in support of the order appealed from is essentially correct, we affirm substantially for those reasons. We add the following, however.

The trial court correctly determined that section 12A:3-404 did not provide Commerce a defense to the presentment warranties provided to Hibernia. Commerce cannot avail itself of the defense provided under subsection (a) because it has provided no evidence that Vaughn "induce[d] the issuer ... to issue the instrument" to him or anyone acting in concert with him, as required for this defense. *N.J.S.A.* 12A:3-404(a). Inducement should be shown before inquiry is made into whether any impersonation has taken place. *See, e.g., Clients' Sec. Fund of Bar of New Jersey v. Allstate Ins. Co.,* 219 *N.J.Super.* 325, 331-32, 530 *A.*2d 357 (App. Div.1987) (holding that impostor defense requires not only impersonation, but also that the drawer or maker was induced into issuing the instrument to the impostor by the impersonation).

We agree that the record plainly fails to establish that Vaughn induced Otto into issuing him the check. The record indicates, rather, that ENSCO-B is a going concern with which Otto regularly engages in business transactions. Otto issued the check to ENSCO-B as payment for monies due under several invoices. According to the certification of Otto's agent, the check was sent by Otto with several others via regular mail in accordance with general business practices. The record fails to provide any evidence that makes the defense in section 12A:3-404(a) available to Commerce.

Commerce also errs in asserting that the court mistakenly relied on *N.J.S.A.* 12A:3-405, instead of section 12A:3-404 which superseded it and that subsection (c) of the current "impostor

and/or fictitious payee" rule provides it a defense to section 12A:4–208.

This contention has no merit for a number of reasons. First, the trial judge in fact relied on section 12A:3–404 in reaching his decision. In its analysis, the court refers to both paragraphs (a) and (b) of section 12A:3–404 as being inapplicable. The court also referred to subsection (c) when it stated that, "it also seems to me that under Section (c) of 12A:3–404 that the endorsement by Marcus Vaughn is not made in a name substantially similar to that of the payee ENSCO Marine Offshore–B." Moreover, Commerce's argument that it should prevail under subsection (c) is equally lacking in merit. That provision reads:

Under subsection a. or b. of this section, an indorsement is made in the name of a payee if it is made in a name substantially similar to that of the payee or the instrument, whether or not indorsed, is deposited in a depositary bank to an account in a name substantially similar to that of the payee.

[*N.J.S.A.* 12A:3–404(c).]

Subsection (c) is part of the revisions made to sections 12A:3–404 and 12A:3–405, and makes reference to the types of "indorsements" necessary for coverage under those sections. James J. White & Robert S. Summers, *Uniform Commercial Code* § 16–4 at 84 (3d ed.1993). Contrary to Commerce's contention, it does not appear that this revision was intended to address payee titles, but rather to address holdings that barred banks from asserting defenses under the former version of UCC § 3–405 on account of inexact or inadequate indorsements. *See N.J.S.A.* 12A:3–404 cmt.1 (stating that revised subsection (c) "requires only that the indorsement be made in a name 'substantially similar' to that of payee"). *Compare Twellman v. Lindell Trust Co. v. Continental Bank & Trust Co.*, 534 *S.W.*2d 83, 92–93 (Mo.Ct.App.1976) (finding that the forged indorsement was not identical to the payee as required by UCC 3–405, and, therefore that section did not apply), *and Travco Corp. v. Citizens Fed. S. & L. Ass'n*, 42 *Mich.App.* 291, 201 *N.W.*2d 675, 676 (1972) (holding that inexact indorsements precluded application of former UCC 3–405), *with Kraftsman Container Corp. v. United Counties Trust Co.*, 169 *N.J.Super.* 488,

497, 404 *A*.2d 1288 (Law Div.1979) (construing former UCC 3–405 to require indorsements be "substantially identical" to named payee). Subsection (c) modifies paragraphs (a) and (b) and will not provide a defense unless one of the two aforementioned defenses applies. *See, e.g., King v. White*, 265 *Kan.* 627, 962 *P*.2d 475, 481 (1998) (recognizing that the "fictitious payee" rule was broadened to include indorsements which are "substantially similar").

In short, Judge Fratto properly rejected Commerce's asserted impostor defense as lacking any basis in the record and recognized that this dispute falls within the general rule that, as we recently reiterated it in *Kuhn*, "the depository bank is in the best position of any other bank to guard against forged or unauthorized endorsements." 366 *N.J.Super.* at 446, 841 *A*.2d 496.

Affirmed.