210 N.J. Super. 359 (1986)
509 A.2d 832
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, PLAINTIFF,
v.
WHITEHEAD BROTHERS COMPANY, INC., DEFENDANT.
Superior Court of New Jersey, Law Division Cumberland County.
February 6, 1986.
*362 Robert P. Grabowski for plaintiff (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
J. Michael Nolan, Jr. for defendant (Pitney, Hardin, Kipp & Szuch, attorneys).
DeSIMONE, A.J.S.C.
This is a condemnation action in which a defendant brings a motion in limine to establish the evidence it may be allowed to use at trial.[1] Defendant, Unimin Corporation, has an interest in the case which involves sand deposits and a nearby factory used for processing sand. The issues presented are the value of land and severance damages, and Unimin asks for a ruling that the following are admissable: (1) evidence that sand reserves enhance the value of condemned land, (2) evidence of the value of the land, based upon capitalization, (3) evidence of severance damages to Unimin's processing plant, and (4) evidence of the condemnation's impact on Unimin's business operations. The court rules that only the first request is granted and that the remaining three are denied, for the reasons stated herein.
The history of this case has its beginnings in wildlife. Over the years the bald eagle has become increasingly rare in New Jersey. While its existence in this State may not be well-known, one nesting pair of bald eagles still remains in a place called Bear Swamp in Cumberland County. Presently, the Bear Swamp, which is the last major hardwood swamp forest in New Jersey, offers the high nesting and roosting trees, and the *363 seclusion and protection required by the bald eagles. The nest itself is found in the largest pond pine (Pinus seratina) ever recorded in New Jersey. After studying the problem, the New Jersey Department of Environmental Protection began condemnation proceedings to protect the eagles from public harassment and to increase the possibility of eagle nesting in the future. Eventually over 1100 acres were condemned as a buffer zone for the eagles. Most of the condemned acreage covered several parcels owned by two companies known as Whitehead Brothers and M.J. Dilks & Company. Although Whitehead Brothers owned the greater amount of property taken by the State, high-quality sand deposits were common to both of the properties.
Unimin is in the business of mining, producing and selling high quality silica sand, and became involved in the case because it leased the right to mine sand found in both properties. While the condemnation has been successful in protecting the bald eagles' nest, the company's plans to mine the sand have languished because of the taking. Therefore, Unimin wishes to participate in the hearing in this matter, and wants to ensure that the presence of sand is properly considered in the valuation of the property.
In addition to the sand deposit, defendant owns and operates a factory on the Whitehead property which it uses to process sand. Unlike the situation involving the sand, however, the site of the factory has not been included in the condemnation. Nevertheless, it is argued that the operation of the factory will be severely depressed by the end of Unimin's lease on the condemned part of the Whitehead property. Unimin describes the sand on the Whitehead property as particularly attractive because it is of high quality and is easy to mine because of its location near the surface. Defendant does not presently mine sand on the Whitehead property, and acknowledges that the performance of the nearby factory is also not impaired at this time. However, when it needs sand in the future and turns its attention to the Whitehead property, Unimin argues that the *364 useful life of the plant will be shortened because the reserve will have disappeared. Simply stated, the contention is that the State is taking the efficient operation of a factory for which it should give compensation. Unimin, therefore, requests severance damages.
Procedurally, this motion is in limine. While there is no rule or statute that expressly authorizes it, the procedure is recognized as part of the civil procedure of the courts here and in most other jurisdictions. Not only is the motion an aggressive trial technique, but it is an increasingly popular method of getting an early ruling on the admissibility of evidence. 21 Wright & Graham, Federal Practice and Procedure, § 5037 at 193. Under the right circumstances, the motion provides an excellent framework for a ruling. Recently, the Third Circuit noted that the in limine procedure often permits more thorough briefing and argument than would be likely if the proceedings are deferred. In Re Japanese Electronics, 723 F.2d 238, 260 (3 Cir.1983). On the other hand, it must be stated that this court is vigilant for requests that may be premature instead of early; proofs which can only develop in the environment of the hearing will be left for a decision until that time.
In this case, both parties are faced with imminent discovery requirements, including the exchange of expert's reports and a list of comparable sales and leases under R. 4:73-11. The complex nature of Unimin's proposed evidence creates substantial demands in both its presentation and rebuttal. A resolution at this time avoids wasted effort and the possibility of a new trial conducted in error. When considered in light of the thorough arguments presented by both parties, Unimin's motion appears to be both conscientious and ripe for a decision. For these reasons, the court has consented to rule upon defendant's motion.
Unimin's first request is straightforward. It wants the opportunity to participate in the valuation of the Whitehead property. In this respect, the general rule is that a leasehold *365 interest, such as Unimin's, is enough to ensure participation at trial. Basic to the application of any eminent domain statute is the theory that just compensation will be paid for property taken by public authority. U.S. Const., Amends. V and XIV; N.J. Const. (1947), Art. I, par. 20; N.J. Sports Exposition Authority v. East Rutherford, 137 N.J. Super. 271, 279 (Law Div. 1975). New Jersey's determination of "just compensation" allows all interests, including the leasehold, to be compensated. However, New Jersey also follows the "unit rule," which allows only one award as the summation of all the separate interests in the property. N.J. Highway Authority v. J. & F. Holding Co., 40 N.J. Super. 309, 314-315 (App.Div. 1956). This means, in effect, that the tenant may participate in the condemnation hearing, but is not entitled to have his tenancy separately and specifically evaluated in the condemnation award. The actual apportionment takes place at a separate and later proceeding. Id. at 315. On this point there is no disagreement. Both parties agree that Unimin should be permitted to introduce evidence on the value of the land when the overall price is determined.
Just as a tenancy is not separately valued in a condemnation, mineral deposits on a property are not valued out of the ground. Being interested primarily in the sand on the Whitehead and Dilks properties, Unimin is concerned with the extent that sand enhances the value of the land. Defendant proposes to show this by the capitalization method, a method which examines the interaction of highest use, depreciation and future net income from mining operations. In other words, the proposed evidence will involve future profits. The issue of future profits and mineral deposits has been considered before in New Jersey, and in a case involving sand deposits, it was held that:
These questions are for the most part collateral and contingent and involve the calculations of costs and profits to such an extent as to fall directly within the ban of this court ... Valuing land taken under condemnation underlaid with stone, the stone should not be valued separately and apart from the land, but it may be shown to what extent the land is enhanced in value by the stone. The stone is a component part of the land. So here the sand and gravel. [Ringwood *366 Co. v. North Jersey Dist. Water Supply Commission, 105 N.J.L. 165 (E. & A. 1928).]
The rule relied upon in New Jersey stems from the possibility that a consideration of "net income" (i.e., profits) would inevitably lead the trier of fact into considerations of the market value of sand out of the ground. Today the court is concerned with the effect of two marketplaces on the condemnation. This court finds that there is only one marketplace for such a valuation in New Jersey  the fair market value of the land itself. Therefore defendant will be limited to showing the extent that sand-in-place enhances the value of the Whitehead property.
An additional problem with the capitalization method is its speculative nature. Recently, the Appellate Division considered an alternative valuation approach and stated that "the trial judge would have committed an error had he acceded to the owner's request to charge the jury that the `income approach is the only realistic method of evaluating mining properties'." State Dept. of Environmental Protection v. S. Nalbone Trucking Co., 128 N.J. Super. 370 (App.Div. 1974), certif. den. 65 N.J. 575. Again, the holding in this case as well as in Ringwood Co. simply reflects a concern with speculative methods of evaluation. Unimin's suggested approach is also affected by variables such as equipment costs, personnel, and storage costs. Mining leases contain additional variables not found in the depreciation of leased space in a building. Trucking, marketing, the stability of the market, and the efficiency of the manufacturer's process all affect profits. Even weather can create unforeseen and severe excavation problems. Moreover, Unimin's proposed method is particularly uncertain when it has yet to remove any sand from the property, but only proposes to do so in the future. For these reasons, this court refuses to extend the capitalization valuation method to this mineral lease.
The third request in Unimin's motion involves severance damages. As stated, the theory is that the elimination of the Whitehead property will impair the performance of a factory *367 on a nearby parcel. While this may or may not actually occur, the recovery of severence damages is subject to strict legal criteria. In Housing Authority of Newark v. Norfolk Realty, 71 N.J. 314, 323 (1976), the Supreme Court said that unity of use and unity of ownership must exist before a party may recover severance damages. To establish the first element, unity of use, the landowner must show that the lots were constituent parts of an economic unit. Id. at 322. The application of the test to the facts of this case is by no means clear, and presents an instance where the court could not properly rule on the motion in limine. Instead, the issue of whether the Whitehead parcels were functionally integrated would be left for a determination at the hearing.
The second element of severance damages, unity of ownership, does lend itself to a determination in limine in this case. To establish unity of ownership, defendant must show at least a beneficial ownership of each parcel. Here defendant leases property on one parcel, and owns a building, but not the land under it, on another parcel. Based upon these facts, the court rules that defendant's leaseholds are fatal to unity of ownership, even though it may own a factory on one of the parcels.
The court relies on Norfolk Realty, supra, as well as Manalpan Township v. Genovese, 187 N.J. Super. 516 (App.Div. 1983) as authority for its ruling. In Manalpan, the court considered a situation where the condemnee owned one parcel outright and rented another. On the first parcel, the condemnee operated a shopping center and rented a lot across the street on the other parcel, which drivers used for parking when they patronized his stores. When the State condemned the parking lot, defendant asked for severance damages, arguing that the loss of parking would mean lost business. His request was denied because the court felt that the leasehold interest was not enough to constitute beneficial ownership. The court ruled that beneficial ownership of the parking lot was not found in the lessee, but in the *368 person who "received the monthly rental and held the fee." Id. at 524.
In this case, the court rules that defendant similarly did not have beneficial ownership. While both parcels may have been owned by Whitehead Brothers, Unimin was only a lessee on each. The reality of the situation was that another party held the underlying fee and was to collect income from the leasehold. No New Jersey case has extended the law of severance damages to such a situation, and the court refuses to do so here.
Finally, defendant asks the court to admit evidence of consequential damages based upon future damage to its business due to losing the sand reserves. New Jersey follows the rule that ordinary losses or other damages consequential to a taking, such as loss or destruction of goodwill, loss of profits, inability to relocate, and frustration of a condemnee's plans are too remote and uncertain to measure accurately. State v. Cooper Alloy Corp., 136 N.J. Super. 560, 568 (App.Div. 1975); New Jersey Sports and Exposition Authority v. East Rutherford, 137 N.J. Super. 271, 291 (Law Div. 1975). The rationale for these cases parallels the rule for valuing minerals in the ground; the need to avoid unnecessary speculation in awarding damages takes precedence. In addition, they depend on various factors not directly attributable to the land, but rather are peculiar to the owner and accordingly furnish no reliable criteria for the fixing of market value at the time of taking. Cooper Alloy, supra at 568. Here the court is asked to admit evidence of consequential damages, ostensibly for the purpose of showing the highest and best use of the land. The few cases which have admitted consequential damages to show highest and best use involved the impact on a going business. The unique aspect of this case involved the uncertainty of mining operations and the fact that Unimin had not touched the sand on the condemned land as of the time of taking. Considering these and predictions of lost business as consequential damages *369 would make it difficult if not impossible to avoid layers of confusion and speculation in measuring damages. In a case such as this involving untouched mineral reserves, the best method of measuring compensation for the sand remains the traditional enhancement method described above. Therefore, the court rules that evidence of consequential damages should not be presented by Unimin.
For these reasons, the first request by Unimin is granted and defendant is permitted to show the extent the presence of sand enhances the value of the condemned property. Unimin's participation will, of course, be subject to the trial judge's control to preserve order and avoid repetitious proofs. The remaining three requests in defendant's motion are denied.
NOTES
[1] This motion is brought in the case captioned State v. Whitehead Brothers, Inc. et al., Docket No. L-030701-84, and is also submitted in the companion case captioned State v. M.J. Dilks & Company, et al., Docket No. L-039750-84.