920 A.2d 125 (2007)
392 N.J. Super. 141
UNION COUNTY IMPROVEMENT AUTHORITY, Plaintiff-Respondent,
v.
ARTAKI, LLC, Defendant-Appellant, and
Independence Community Bank, Broad National Bank, Gloria's Beauty Salon, Biddle's Barber Shop, and City of Linden, Defendants.
Union County Improvement Authority, Plaintiff-Respondent,
v.
Michael Tzezairlidis, Alexandros Tzezairlidis and Katrina Tzezairlidis, Defendant-Appellants, and
Broad National Bank, The Trust Company of New Jersey, Bank of New York, Total Traders, Inc., Second Chance and City of Linden, Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted January 23, 2007.
Decided April 13, 2007.
*126 Bathgate, Wegener & Wolf, Lakewood, for appellants (Peter H. Wegener, of counsel; Danielle A. Maschuci, on the brief).
Gluck, Walrath, Trenton, for respondent (David A. Clark, on the brief).
Before Judges WEISSBARD, PAYNE and LIHOTZ.
The opinion of the court was delivered by
LIHOTZ, J.T.C. (temporarily assigned).
Defendants, Artaki, LLC (Artaki), Michael Tzezairlidis, Alexandros Tzezairlidis and Katrina Tzezairlidis, appeal from the denial of their joint motion to consolidate two condemnation actions initiated by *127 the Union County Improvement Authority (UCIA), seeking condemnation, for the public purpose of redevelopment, of five contiguous properties located in the City of Linden (City). Defendants argue consolidation is proper because "there is unity of title, unity of use and physical contiguity among all the parcels in question." The trial court determined that the corporate entity, Artaki, was sufficiently distinct from the individual owners, to defeat unity of ownership, making consolidation inappropriate. We reverse and remand.

I.
UCIA filed two complaints. The first, UCIA v. Artaki, LLC. et. als., Docket No. UNN-L-4040-04, sought to acquire by condemnation under the Eminent Domain Act of 1971, N.J.S.A. 20:3-1 to-50, land owned by Artaki, located at Block 449, lots 9 and 10, on the Official Tax Map of the City, commonly known as 133 and 137 South Wood Avenue. The property contains a two-story 4,146 square foot mixed-use building, which includes ground floor retail space and a second floor residential apartment.
The owners of Artaki are: Alexandros, twenty-five percent; Katina, twenty-five percent; Michael, twenty percent; John Tzezairlidis, twenty percent; and George Tzezairlidis, ten percent. Alexandros and Katina are the parents of Michael, John and George.
The second complaint, UCIA v. Michael Tzezairlidis, et. als., Docket No. UNN-L-4044-04, sought to acquire four parcels by condemnation: one property solely owned by Michael, located at Block 449, Lot 14, on the Official Tax Map of the City, commonly known as 109 South Wood Avenue, improved with a two-story 1,806 square foot residential apartment building; and three properties jointly owned by Michael, Alexandros and Katina, including: Block 449, Lots 1 and 15, on the Official Tax Map of the City, commonly known as 103, 105, and 107 South Wood Avenue, improved with two attached buildings used for a mixture of retail, industrial and residential apartment space; Block 449, Lot 2, on the Official Tax Map of the City, commonly known as 16 East Linden Avenue, improved with a one-story building containing approximately 3,750 square feet of industrial warehouse space; and Block 449, Lots 11, 12, and 13 on the Official Tax Map of the City, commonly known as 113, 115, and 127 South Wood Avenue, which contains a vacant 3,985 square foot two-story, mixed-use building, that, historically, was used as retail and residential space.
Defendants' properties are located within a section of the City that was designated as an area in need of redevelopment, pursuant to the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 to-49. The area was re-zoned in accordance with the City's redevelopment plan, and the City authorized the execution of an Interlocal Services Agreement designating UCIA as the redevelopment agency for the area. UCIA designated Verge Properties Urban Renewal, LLC (Verge) as its redeveloper. Verge received approvals[1] from the City's Planning Board to develop the entire site in accordance with the newly established zoning plan and to construct 15,000 square feet of retail space and sixty-eight residential condominiums.
The trial court entered orders concluding that the UCIA properly exercised its eminent domain powers to condemn the subject properties and appointing commissioners to determine the just compensation to be paid to defendants. On October 12, *128 2005, the appointed commissioners rendered reports in each lawsuit, valuing each parcel separately. Defendants appealed to the Law Division, N.J.S.A. 20:3-12; R. 4:73-6(a), arguing the valuations failed to provide "just compensation for the property taken." State v. Caoili, 135 N.J. 252, 260, 639 A.2d 275 (1994); N.J. Const. art. I, ¶ 20. There is no challenge to the exercise of authority by the UCIA. The issue remaining for disposition is the value of the properties subject to condemnation.
On November 4, 2005, UCIA filed a motion to consolidate the two condemnation matters for trial. Defendants joined in the request. UCIA then withdrew its motion, and consolidation was denied by order dated March 14, 2006. Defendants did not file for reconsideration or appeal of that order. On June 2, 2006, defendants initiated their own motion for consolidation of the two actions, which was opposed by UCIA. The motion was denied on June 23, 2006. Upon our leave granted, R. 2:2-4, defendants filed this interlocutory appeal.

II.
We first briefly address the question of whether defendants' motion to consolidate should have been denied because it was an untimely request for reconsideration of the March 14, 2006 order denying consolidation. Plaintiff argues that denial of defendants' motion for consolidation, not filed until June 2, 2006, was warranted on the procedural basis that it was filed out of time. See R. 4:49-2 (requiring motions for reconsideration to be filed within twenty days of date of court order).
In exercising his discretion to consider the June 2, 2006 motion, the motion judge stated:
[T]echnically this is a motion for reconsideration of my original decision with a . . . little different argument.
Number one, it is out of time really. . . . The plaintiff is accurate in terms of this rule. It has to be done within 20 days of the original decision. . . . I won't hang my hat on just that, quite candidly, because we have some significant issues here.
We conclude the motion judge's decision to determine the merits of defendants' application was well within the scope of his discretion. See Johnson v. Cyklop Strapping Corp., 220 N.J.Super. 250, 261-64, 531 A.2d 1078 (App.Div.1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988) (stating a motion to reconsider interlocutory orders may be made any time until entry of final judgment in the court's discretion and in the interests of justice). Additionally, according to Rule 1:1-2, "[t]he rules . . . shall be construed to secure a just determination. . . . Unless otherwise stated, any rule may be relaxed . . . by the court in which the action is pending if adherence to it would result in injustice." See also Stone v. Old Bridge Twp., 111 N.J. 110, 125, 543 A.2d 431 (1988) (stating, in Justice Clifford's oft-quoted dissent: "[o]ur Rules of procedure are not simply a minuet scored for lawyers to prance through on pain of losing the dance contest should they trip."). The trial court's consideration of the motion because it raised "significant issues" was an appropriate exercise of discretion and served the interests of justice.

III.
During the motion argument, defendants maintained consolidation should be granted to promote judicial economy and avoid inconsistent rulings in the condemnation cases because the two matters involve identical legal and factual issues, that is, the condemnation of contiguous properties for the same public project, using the same appraisal expert who evaluated all properties *129 and who would present evidence of the same comparable sales to determine value. Defendants also argued that the parcels constituted a common investment unit that should be valued by one jury in a consolidated action, not as separate parcels valued by separate juries in non-consolidated actions. See State v. Silver, 92 N.J. 507, 521-22, 457 A.2d 463 (1983).
UCIA suggested consolidation was inappropriate because Rule 4:73-6(b) requires that "the appeal concerning takings from the separate tract shall be severed from each action for the purpose of trial" and N.J.S.A. 20:3-7(b) mandates that "separate awards, judgments and appeals be entered and taken with respect to each parcel."
In denying defendants' motion, the motion judge stated:

Rule 4:73-6 provides[,] unless the court otherwise orders[,] if the original action involves a taking or takings from a tract of land under single ownership, the appeal should be docketed under the number assigned to the original action and shall continue in that action.
If that rule is followed and since each original action involves a taking from a tract of land under single ownership, the matter should be consolidated if, in fact, that's true. However that is not true. We don't have single ownership here. I understand it is the same family[,] but you have different entities. You have a corporate entity that is owned by certain members of that family. You have other lots that are owned by Tzezairlidis[es] different than Artaki and different from other family members involved in the Artaki piece of property. While they are contiguous . . . their uses are similar but not tied into one another and that's really the problem you have here.
As an example, if there were joint ownership-so while you have similarity of use, the uses are not interlocked as you have in the [Housing Authority of Newark v.] Norfolk [Realty Co., 71 N.J. 314, 322, 364 A.2d 1052 (1976)] case. . . .
Each of the uses [is] totally separate from each other, although they are similar uses and even though there is a managing company, something within the family to manage the various buildings and units on each separate parcel, that doesn't mean it's the same use that is interlocked between the two parcels of land.
As an example, . . . if Artaki wants to sell off [its] parcel separately, [it does not] need permission from the other Tzezairlidises to sell the property, or if [the] Tzezairlidis[es] wanted to sell their property they don't need to get permission from Artaki to sell their property. They can sell each parcel separately.
I see nothing in the record before me to show that they are in any way, shape or form consolidated for the City's purposes. They are separat[ly] taxed lots, they are treated separately for tax purposes, they are treated separately at this point for zoning purposes. . . .
[W]ith the ownership as stated by [counsel], Alexander, Katrina[,] and Michael and John and George [sic] are the owners of Artaki and each have different percentages of ownership. . . . [O]n the other parcel of property Michael is a one-third owner, Alexander a one-third owner and Katrina a one-third owner. The two law suits involve separate tracts of land, although they are contiguous and involve multiple parcels . . . there is not unity of ownership I find in this case. While they are operated by the family as an enterprise and managed as such, the properties are not a single entity. There are two separate entities with different owners.
. . . .

*130 The bottom line is when you consider they are separate tracts of land owned by separate entities and their uses are . . . similar uses but not . . . intertwined uses, . . . one use is totally separate from another use based on tax rateables, anything you want to look at in terms of individual ownership, they are treated separately.
So when you consider that and you consider the rule under [Rule] 4:73-6, if the original action involves a taking . . . from a tract of land under single ownership, which we don't have I am finding here, the appeal should be docketed under the number assigned to the original action and shall continue in that action. It means they don't get consolidated.

IV.
Authority to consolidate actions is found in Rule 4:38-1, which states: "When actions involving a common question of law or fact arising out of the same transaction or series of transactions are pending in the Superior Court, the court on a party's or its own motion may order the actions consolidated." Further, in condemnation actions, "[t]he condemnation of [ten] or less parcels of property lying wholly within the same county may be joined in one action; provided that a separate award, judgment and appeal shall be made, entered and taken with respect to each parcel. . . ." N.J.S.A. 20:3-7.
The decision to consolidate actions lies within the discretion of the trial court. R. 4:38-1(a); see also Kaselaan & D'Angelo Assocs. v. Soffian, 290 N.J.Super. 293, 299-301, 675 A.2d 705 (App.Div. 1996); Dep't of Transp. v. PSC Res., Inc., 159 N.J.Super. 154, 166, 387 A.2d 393 (Law Div.1978). Under a misapplication of discretion standard, the lower court's decision should not be set aside unless the lower court pursued a "manifestly unjust course." Gittleman v. Cent. Jersey Bank & Trust Co., 103 N.J.Super. 175, 179, 246 A.2d 757, (App.Div.1967) (stating that "in reviewing the exercise of discretion it is not the appellate function to decide whether the trial court took the wisest course, or even the better course, since to do so would merely be to substitute our judgment for that of the lower court"), rev'd on other grounds, 52 N.J. 503, 246 A.2d 713 (1968).
The trial court's denial of consolidation turned on the fact that Block 449, Lots 9 and 10, are owned by Artaki, and the remaining parcels, Block 448, Lots 1, 2, 11, 12, 13, and 15, are owned by individuals. Further, the motion judge determined that Rule 4:73-6 requires separate actions, and therefore separate trials, when the subject properties do not have "the same use that is interlocked between the . . . parcels," and when they are treated separately for tax and zoning purposes by the City. These very issues  unity of ownership and unity of use  are the essence of defendants' appeal.

A.
While the property ownership among the five parcels subject to condemnation is not identical, each parcel shares some common ownership with the others. Thus, we need to examine whether the trial court's legal conclusion of differentiated ownership is supported.
The concept of "unity of ownership" suggests that physically separate parcels are owned in their entirety by one owner or set of owners. The concept, however, is flexible and does not require a rigid definition of ownership on the basis of bare legal title. This fluid interpretation of the unity of ownership concept was addressed by the Court in Housing Auth. of City of Newark v. Norfolk Realty, 71 N.J. 314, *131 324, 364 A.2d 1052 (1976). In Norfolk, the defendant partnership owned land subject to condemnation, which contained a warehouse and garage. 71 N.J. at 318, 364 A.2d 1052. Across the street was a processing plant. Ibid. The processing business and a portion of the realty where the plant operated was owned by Davis White, Inc., whose shareholders were the three partners of the defendant. Ibid. The remaining portion of the processing plant realty was owned by the defendant, which leased it to Davis White. Ibid. Finally, the warehouse and garage were leased by the defendant to Davis White for its overall processing plant operations. Ibid.
The defendant claimed an entitlement to an award of severance damages. Asserting that the condemnation of the warehouse and garage was a partial taking of the overall processing plant operations and that the warehouse and garage were a functionally integrated part of the Davis White processing plant, the defendant argued the taking adversely affected the value of the remaining realty. Id. at 320-21, 364 A.2d 1052. In condemnation cases, severance damages are awarded only when there is a partial taking of a parcel of realty, the uncondemned parcel and the condemned parcel are functionally integrated, and there exists a unity of ownership. Id. at 321-22, 364 A.2d 1052.
When determining unity of ownership, the Court addressed the question of "whether strict unity of title in a given entity must exist, or whether ownership is a matter of substance rather than form so that identity of beneficial interest will suffice." Id. at 323-24, 364 A.2d 1052. In this regard, the Court concluded:
This Court has been reluctant to pierce the corporate veil in order to allow a corporation to gain an economic advantage. See, e.g., General Public Loan Corp. v. Director, Div. of Taxation, 13 N.J. 393, 400, 401, 99 A.2d 796 (1953). However, the concept of eminent domain requires that the realities underlying corporate ownership of land be fairly recognized. Normal business considerations, including due regard for federal tax consequences, may indicate that a bifurcated ownership of the assets of a functionally integrated enterprise is more desirable than ownership by a single entity. The law should not require businessmen to ignore otherwise sensible economic planning decisions in order to retain their right to full actual damages consequent upon a public taking.
. . . .
Therefore, the fact that the condemned parcel was owned by Norfolk while most of the other parcel is owned by Davis White does not alter the unity of beneficial ownership of the whole and thus the true unity of loss.
[Ibid.]
The Court also quoted, with approval, § 1007 of the Uniform Eminent Domain Code (Official Text 1974), which states: "For the purposes of determining compensation under this Article, all parcels of real property, whether contiguous or noncontiguous, that are in substantially identical ownership . . . shall be treated as if the entire property constituted a single parcel." Norfolk, supra, 71 N.J. at 325, 364 A.2d 1052 (emphasis in original).
The instant matter differs from Norfolk in three respects: first, the UCIA has condemned the entirety of all parcels owned by defendants, obviating the concept of severance damages; second, Artaki's ownership includes the minority interests of John and George, in addition to the interests of Alexandros, Katina and Michael, the individuals owning the contiguous parcels; and third, the percentages of each ownership interest in the various parcels *132 is not equal among the respective owners.
Other than Norfolk, no case specifically addresses the applicability of unity of ownership when a corporate entity owns one parcel subject to condemnation and individuals or partners own the other parcels. In State v. Bakers Basin Realty Co., 138 N.J.Super. 33, 44, 350 A.2d 236 (App.Div. 1975), aff'd 74 N.J. 103, 376 A.2d 1189 (1977), we held that a developer who contracted to purchase three lots and had long-term leasehold interests in two adjacent lots could not claim unity of ownership in the leased lots as the leasehold was not an ownership interest. Similar results were reached in Manalapan v. Genovese, 187 N.J.Super. 516, 524, 455 A.2d 536 (App.Div.1983), and State v. Whitehead Bros. Co., 210 N.J.Super. 359, 368-69, 509 A.2d 832 (Law Div.1986). In Genovese, we determined that beneficial unity of ownership did not exist where defendant owned one parcel housing his business and rented another nearby parcel maintained for parking for the business. In Whitehead Bros., the Law Division held that the defendant's interests, which included a lease of property on one parcel and ownership of a building, but not the land under it, on another parcel, also failed to satisfy the unity of ownership test. 210 N.J.Super. at 367, 509 A.2d 832. There are other cases addressing the unity of ownership concept in the context of a party's right to assert an easement of necessity, see, e.g., Double MK Farm v. Frelinghuysen Twp., 11 N.J.Tax 6 (1990), which do not provide helpful guidance.
In reviewing this matter, we determine that the motion judge incompletely analyzed whether the subject ownerships of the respective parcels in each litigation met the "substantially identical ownership" test set forth in Norfolk, as the use of a corporate structure alone does not defeat "unity of beneficial ownership of the whole." To fully evaluate defendants' claim of unity of ownership it is necessary to examine the structure and management of Artaki.
The Limited Liability Company Act (LLC Act), N.J.S.A. 42:2B-3 to-70, enables members of an LLC "to take advantage of both the limited liability afforded to shareholders and directors of corporations and the pass through tax advantages available to partnerships." Kuhn v. Tumminelli, 366 N.J.Super. 431, 439, 841 A.2d 496 (App.Div.2004) (quoting Senate Commerce Committee Statement, S. Doc. No. 890, at 1 (June 14, 1993)). The LLC Act allows the creation of a written operating agreement among the members as to the affairs of the LLC and the conduct of its business. N.J.S.A. 42:2B-2,-22, and-29. In the absence of an operating agreement, the statutory provisions control. Kuhn, supra, 366 N.J.Super. at 440, 841 A.2d 496. The record below fails to disclose whether a written operating agreement for the management of Artaki exists. If one exists, it may be determinative on who controls Artaki. In the absence of a operating agreement, we look to the provisions of the LLC Act.
The statute provides:
Unless otherwise provided in the operating agreement, management of a[LLC] shall be vested in its members in proportion to the then current percentage or other interest of members in the profits of the [LLC] owned by all the members, the decision of members owning more than 50 percent of the then current percentage or other interest in the profits controlling.
[N.J.S.A. 42:2B-27(a)(1).]
Similarly, in the absence of an operating agreement, profits, losses, and distributions of cash or other assets of an LLC *133 shall be allocated among the members "on the basis of the agreed value (as stated in the records of the [LLC]) of the contributions made by each member. . . ." N.J.S.A. 42:2B-34 and-35. Additionally, "members who own more than 50 percent of the then current percentage or other interest in the profits of the [LLC] owned by all of the members . . . may wind up the [LLC] affairs." N.J.S.A. 42:2B-50.
A fair reading of these provisions vests authority to manage and conduct affairs of Artaki in those members constituting a majority, which would be Alexandros, Katina, and Michael. Because these three individuals also completely own or share ownership of the realty subject to condemnation in the second action, the true economic control and ownership of all parcels rests with Alexandros, Katina, and Michael. Accordingly, the recognition of the "realities underlying corporate ownership of the land," Norfolk, supra, 71 N.J. at 324, 364 A.2d 1052, would result in the conclusion that there exists commonality of ownership between the majority members of the Artaki in one condemnation action and the individual owners in the other condemnation proceeding. See also Lyon v. Barrett, 89 N.J. 294, 301, 445 A.2d 1153 (1982) ("Because of the desire to assure fair compensation in eminent domain cases, a court may consider the unity of interests of lots owned separately by a corporation and its shareholders.").
The motion judge's different conclusion impacted his ultimate exercise of discretion when denying consolidation of these matters. As a result, we determine it is necessary to reverse and remand this matter for further consideration of the substance of the ownership and management structure of Artaki.

B.
Defendants also present evidence of "unity of use" among the contiguous parcels. To establish unity of use the landowner must show that the lots were constituent parts of a single economic unit. Norfolk, supra, 71 N.J. at 322, 364 A.2d 1052. Defendants argue that the economic unity among the properties, which are used as commercial and residential rental units, is evidenced by their operation as a "family enterprise," using "one accounting department [which] pays all the bills and provides all the landlord services to all [rental] units on the property" with "control over said monies being exercised by Michael, Alexandros and Katina."
Inextricably intertwined with the determination of unity of use is defendants' theory on the method of valuation to determine "the highest and best use" of the realty, County of Monmouth v. Hilton, 334 N.J.Super. 582, 587, 760 A.2d 786 (App. Div.2000), which is the pivotal issue for resolution in the underlying litigation. Defendants argue that the value of each individual lot would not properly provide the reasonable compensable value of the realty. In an argument that is unique in this context, defendants instead suggest that it is appropriate to use an integrated value for an entire commonly owned tract, after assemblage of all contiguous lots. Defendants would have the entire tract considered as one for the purpose of development, which essentially is in accordance with plaintiff's planned redevelopment use.
The "unity of use" concept, too, is borrowed from partial-taking cases, where the potential of a unified use of those portions of the subject property remaining after the taking is lost, making that value relevant in determining just compensation for the condemned realty. See Silver, supra, 92 N.J. at 520, 457 A.2d 463. The actual functional or economic combination of parcels at the time of condemnation commonly evinces unity of use; however, we have *134 concluded that the a reasonable probability of integrating properties for a combined use may be relevant when determining an award of severance damages in a partial taking. See Bakers Basin Realty Co., supra, 138 N.J.Super. at 43, 350 A.2d 236.
Recognizing the fluid and complex nature of market conditions, New Jersey courts have shown considerable liberality in admitting evidence of market value, particularly in terms of the "highest and best use" of the subject property. See State v. Gorga, 26 N.J. 113, 138 A.2d 833 (1958) (holding admissible proof of a probable zoning amendment since the prospect of the amendment bore upon the market value as of the date of the taking); see also State v. Market Assocs., 134 N.J.Super. 282, 340 A.2d 663 (App.Div.1975) (holding that the reasonable probability of a change in zoning allowed landowners to show that buyer and seller would have recognized that zoning change and its resultant impact on market value as of the date of taking).
We conclude defendant's valuation theory has utility because, when fixing value in any condemnation case, the "inquiry is not limited to the actual use of the property on the date of taking but is, rather, based on its highest and best use." Hilton, supra, 334 N.J.Super. at 587, 760 A.2d 786. "Highest and best use" has been defined as "`the use that at the time of the appraisal is the most profitable, likely use' or alternatively, `the available use and program of future utilization that produces the highest present land value' provided that `use has as a prerequisite a probability of achievement.'" Ibid. (quoting Ford Motor Co. v. Twp. of Edison, 127 N.J. 290, 300-01, 604 A.2d 580 (1992)).
The Law Division judge properly recognized that the issues surrounding valuation must be presented to the factfinder at trial. The examination of the relevant facts existing at the time of the taking would include the intended, reasonably prospective use of property, which is a germane consideration when determining the property's fair market value. See Silver, supra, 92 N.J. at 514-15, 457 A.2d 463. The UCIA, of course, would be permitted to present evidence of material circumstances bearing upon the likelihood of such a combined use, including any legal or physical condition affecting the use of the subject property. The jury would decide whether defendants created a single integrated unit and whether that fact affects the property's fair market value and the compensation for its taking that must be paid by the UCIA.
In his opinion addressing defendants' motion, the motion judge primarily focused upon the issue of legal ownership of the parcels and, once determining that it was disparate, denied the motion for consolidation. We have remanded the matter for reconsideration of the issue of unity of ownership, to review evidence surrounding control of Artaki and whether identity of common beneficial interest over all parcels exists, as argued by defendants. Although the judge also considered issues surrounding unity of use, his conclusion in that regard may have been influenced by his determination of the ownership issue, and may require revision upon reconsideration of the intertwined issues of control and ownership as they relate to consolidation of the actions. We thus require reconsideration of the question of unity of use as it affects consolidation, as well.
Finally, we determine that compliance with Rule 4:73-6 and N.J.S.A. 20:3-7(b), requiring that separate awards be made for each parcel, does not obviate consolidation of these actions. On remand, the motion judge might conclude that one trial would provide the best means for a jury to determine whether unity of ownership and *135 unity of use of these contiguous parcels exists, and that one trial could best accommodate the overlap of proofs on such considerations as market factors, the potential combined use, and the method of valuation of the realty necessary for a determination of just compensation for each separate parcel.

IV.
In conclusion, it will be necessary on remand for the judge to develop the record and determine whether the proofs presented regarding unity of ownership and unity of use, affecting the value of each parcel, are identical, militating against separate trials.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] The approvals also included one lot owned by a third party, adjoining the Artaki parcels, which was acquired by the UCIA through a settlement with the owner.