# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0395-24

C.J.S.,

    Plaintiff-Appellant,

v.

S.S.,

    Defendant-Respondent.

_____

        Submitted May 22, 2025 — Decided May 29, 2025

        Before Judges Mawla and Vinci.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-1061-25.

        C.J.S., appellant pro se.

        Respondent has not filed a brief.

PER CURIAM

Plaintiff C.J.S.[1] appeals from a September 16, 2024 order dismissing a temporary restraining order (TRO) under the Prevention of Domestic Violence Act, (PDVA), N.J.S.A. 2C:25-17 to -35. He also challenges a September 18, 2024 order, denying his order to show cause for a stay pending appeal. We affirm.

Although the parties divorced in 2019, they have engaged in an extensive post-judgment custody dispute since 2020, which we detailed in a prior appeal. S.S. v. C.S., No. A-2455-21 (App. Div. Oct. 9, 2024) (slip op. at 1). The custody dispute originated in Bergen County but was transferred to Essex County.

This appeal arises from a TRO plaintiff obtained against defendant S.S. on September 5, 2024, in Bergen County. Prior to obtaining the TRO, plaintiff filed two orders to show cause in the Essex County case on September 3 and 5, 2024, to have defendant's parenting time suspended or supervised. He withdrew those emergent applications after a municipal court in Bergen County granted the TRO, and barred defendant from having parenting time.

The domestic violence complaint alleged defendant committed terroristic threats and harassment when, during a virtual court appearance, she and her husband threatened to come to plaintiff's home, kick in his front door, and take

---

[1] We use initials pursuant to Rule 1:38-3(d)(9) and (10).

the children.  Plaintiff also argued defendant had printed sealed court documents, which she then "released . . . to an unknown amount of people, specifically [plaintiff's] immediate family members."  The complaint asserted the documents "contained an approximate [eighteen-]page . . . letter from . . . defendant, lying about . . . plaintiff in an effort to disparage him."  Plaintiff alleged a prior history of domestic violence by referring to the docket numbers of five prior domestic violence complaints.

The matter was initially listed as a virtual trial in Bergen Vicinage on September 12, 2024.  However, on September 10, 2024, defendant wrote to the court and asked that the case be transferred to Essex Vicinage.  Plaintiff, through counsel, objected and argued venue was proper in Bergen because he lived in Bergen County.  The Presiding Judge of the Family Part for Bergen Vicinage issued an order transferring venue to Essex on September 11, 2024.  The order explained the matter was transferred because of the companion custody matter pending before the Essex Vicinage trial judge.

On September 13, 2024, the Essex trial judge scheduled the domestic violence trial to occur in person on September 16, 2024.  The same day, plaintiff's attorney requested plaintiff be permitted to appear virtually.  The judge directed plaintiff to file a request for accommodation with the Essex

3

Vicinage ADA Title II Coordinator. Plaintiff's counsel submitted the accommodation request to the coordinator stating an "in[-]person [c]ourt appearance would have detrimental effects on [plaintiff's] health." On September 13, 2024, the coordinator denied the request, and stated as follows:

> The Judiciary will provide reasonable accommodations for a court user with a disability, enabling the individual to access and participate in a court proceeding provided the accommodation does not fundamentally alter the court proceeding . . . . The FRO [(final restraining order)] hearing will require testimony from both parties. It is necessary for the court to have an accurate and reliable record of the hearing. Based on the challenges of preserving that record in prior Zoom appearances, your request for your client to appear virtually is denied. If you will be requesting an alternate accommodation to facilitate his in-person appearance, please let me know.
>
> If you are not satisfied with the above, you can file an appeal with the Essex Vicinage Assignment Judge. If you choose to file an appeal, you may do so by completing the accommodation appeal form found here:
> [https://www.njcourts.gov/sites/default/files/forms/].

The following day, plaintiff's counsel wrote to the trial judge, stating she had decided to substitute out of the case. Counsel blamed the short turnaround time for an in-person proceeding and harassing emails she received from defendant and her husband since being retained by plaintiff.

4

On September 15, 2024, plaintiff filed a pro se order to show cause. He requested the trial be adjourned for three weeks to: allow him time to retain new counsel; amend his TRO; and appeal the denial of his request for the ADA accommodation. He also sought to amend the TRO to permit defendant supervised in-person visitation with one of the parties' children.

On September 16, 2024, which was the date scheduled for the in-person FRO trial, defendant appeared, but plaintiff did not. Defendant asked the court to dismiss the matter. She claimed plaintiff abused the PDVA and the legal process "for over half a decade" to gain the upper hand in the parties' custody dispute. Defendant argued against an adjournment because she had taken off from work to attend the trial, meanwhile plaintiff did not appear.

The trial judge denied the orders to show cause, the adjournment, and dismissed the domestic violence complaint. He noted the PDVA required the matter to be tried promptly, and the fact plaintiff was seeking new counsel was not basis to adjourn because it was his decision to become pro se.

The judge observed plaintiff had filed his initial orders to show cause in the matrimonial matter on September 3 and 5 but had asked "the [c]ourt not go forward on September 5." On September 10, plaintiff then contacted the judge to withdraw the orders to show cause. The judge obliged. However, "only

A-0395-24

shortly thereafter" the judge learned plaintiff had filed a domestic violence complaint in Bergen County.

Plaintiff later called the judge's chambers "to express his dismay with the Bergen [Vicinage] transferring the case to Essex [Vicinage]." He claimed the trial judge had orchestrated the transfer of the case, arranged to have it assigned to him, and was biased against him. The judge noted he played no role in the process, and the matter was transferred and assigned to him on account of the related custody case pending before him. He recounted plaintiff had previously unsuccessfully sought his recusal twice before.

The judge dismissed the domestic violence complaint for lack of prosecution. Citing the "exceedingly long procedural history [of litigation between the parties] in both Bergen County, where [the parties' case] pended for many years and then post-judgment [when it] was transferred to Essex County," the judge found plaintiff "has taken every effort to delay the ultimate adjudication of [the] post-judgment [matter]."

As another example of these machinations, the judge noted plaintiff had sued the court-appointed best interests expert in Morris Vicinage, causing the expert to exit the case. Plaintiff sued the Essex Vicinage Assignment Judge, the former Presiding Judge of the Family Part in Essex Vicinage, the trial judge, and

A-0395-24

two vicinage employees for ADA violations in federal court. He also sought recusal of the Assignment Judge after she denied his prior appeals of ADA accommodation requests. Plaintiff also sought the former presiding judge's recusal, which was also denied.

Based on these findings, the trial judge concluded plaintiff filed the domestic violence complaint in Bergen County as a means of forum shopping to preclude defendant from having parenting time. Plaintiff's voluntary dismissal of his orders to show cause was because he had achieved this goal through the TRO.

The trial judge stressed his findings were intended to explain why he was not granting plaintiff an adjournment. He expressly noted he did not reach the merits of the allegations in the domestic violence complaint.

The trial judge subsequently entered the September 16 order dismissing the TRO. The order explained the dismissal was because "[p]laintiff fail[ed] to appear for the [f]inal [h]earing" despite being "contacted by the court," and the court "having determined that . . . coercion or duress did not cause [his] non-appearance."

A-0395-24

The following day, plaintiff filed an order to show cause for a stay of the September 16 order pending appeal. He claimed the judge violated his right to due process by denying the adjournment.

The trial judge denied the application for emergent relief because plaintiff failed to demonstrate an irreparable harm or a likelihood of success on appeal. Neither defendant nor the judge caused plaintiff to jettison his attorney and become unrepresented. Further, N.J.S.A. 2C:25-29 required the FRO hearing to occur within ten days of the TRO. Because of the numerous other TRO proceedings between the parties, plaintiff "knew or should have know[n] that he would need to have his potential witnesses and documents ready to proceed to the FRO trial on relatively short notice as required by the PDVA." The judge noted the orders to show cause plaintiff filed before obtaining the TRO "set forth no factual basis for supervised parenting time by [defendant], . . . nor did he state what harm [defendant] posed to the child." Plaintiff knew the TRO would preclude defendant from having parenting time, and by filing in Bergen County he was "hoping to obtain more favorable relief" because the applications for emergent relief and the TRO "sought essentially the same relief."

The trial judge concluded plaintiff's claim the court had violated his rights under the ADA was "unfounded." Not only was plaintiff informed the FRO

8

hearing was in person, "[p]ost-[COVID,] FRO trials are now primarily held in person[,] which greatly assists the [c]ourt in making credibility determinations, which are crucial in these types of matters."

The denial of the recusal also was not grounds to grant a stay pending appeal. The recusal motion was predicated on the fact the trial judge had witnessed one of the predicate acts, namely defendant's alleged threats during the Zoom proceeding, and could be a potential trial witness. The judge rejected the argument because: plaintiff, defendant, and her husband attended the hearing and were available to testify; there was a transcript of the proceedings; and following plaintiff's logic would lead to the automatic disqualification when a judge witnesses contemptuous conduct in their courtroom. The trial judge observed "[t]his is not the law" and further demonstrated plaintiff's order to show cause had "little, if any, likelihood of success on the merits."

## I.

On appeal, plaintiff argues he was denied due process when the trial judge dismissed the TRO without conducting an FRO hearing. He asserts he was entitled to a minimum of one adjournment and the opportunity to retain counsel, amend the TRO, and appeal the denial of the ADA accommodations. Plaintiff contends an adjournment was also necessary because his disabilities prevented

him from attending trial in person. He claims the judge could conduct the trial in a virtual format yet chose to dismiss plaintiff's case without reaching the merits.

Plaintiff argues the dismissal of the TRO violated the Domestic Violence Procedures Manual (DV Manual),[2] which provides for a remote appearance when a plaintiff is unable to appear for the FRO hearing. The DV Manual also suggests an initial adjournment request should be granted to enable a plaintiff to retain or consult an attorney, amend their TRO, or for other good cause.

Plaintiff asserts the judge ignored the DV Manual and instead improperly denied the adjournment because the TRO deprived defendant of parenting time. He notes his order to show cause had offered defendant supervised parenting time. Plaintiff argues he had no time to prepare for trial.

Plaintiff also asserts a due process violation based on the fact the judge dismissed the TRO after improperly taking "one-sided unsworn testimony from" defendant and making unsupported findings of fact, credibility, and motive. He disputes the judge's findings that he was forum shopping. The finding that it was plaintiff who decided to become self-represented was also erroneous

---

[2] The DV Manual is found at
https://www.njcourts.gov/sites/default/files/courts/family/dvprcman.pdf.

A-0395-24

because defendant and her husband were the reason his attorney left the case. The judge also referenced the federal litigation, which plaintiff claims had nothing to do with the adjournment request.

Plaintiff argues the TRO should be reinstated and the matter tried in Bergen Vicinage, pursuant to Rule 5:7A(b). He reiterates both parties reside in Bergen County and defendant's threat to break down his door was a predicate act directed at his residence in Bergen County.

Plaintiff asserts the transfer to Essex Vicinage was improper because the parties' divorce was finalized and there is only a post-judgment litigation pending. Bergen Vicinage allowed plaintiff to appear virtually and participate in prior domestic violence proceedings, proving it is better equipped to handle the matter.

Plaintiff argues the matter should be remanded to a different trial judge because the trial judge made credibility and other findings, including about the alleged forum shopping, and is no longer impartial. Assigning the case to a different judge would also negate the reason for a transfer from Bergen to Essex Vicinage.

11

II.

As a general proposition, we owe substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise . . . .'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). Therefore, we will not disturb a trial judge's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412).

A "trial court's decision to grant or deny an adjournment is reviewed under an abuse of discretion standard." State ex rel. Com'r of Transp. v. Shalom Money Street, LLC, 432 N.J. Super. 1, 7 (App. Div. 2013) (citing State v. D'Orsi, 113 N.J. Super. 527, 532 (App. Div. 1971)). Likewise, the decision to recuse lies within the sound discretion of the trial judge. Jadlowski v. Owens-Corning Fiberglas Corp., 283 N.J. Super. 199, 221 (App. Div. 1995).

12

"When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)). We review questions of law, like due process issues, de novo. N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015).

## III.

"Due process is a fundamental right accorded to both parties under the PDVA." T.M.S. v. W.C.P., 450 N.J. Super. 499, 505 (App. Div. 2017). Our Supreme Court has stated: "At a minimum, due process requires that a party in a judicial hearing receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" J.D., 207 N.J. at 478 (quoting H.E.S. v. J.C.S., 175 N.J. 309, 321-22 (2003)).

The DV Manual states "[t]he court may grant an adjournment" to enable a party to: retain or consult with an attorney; amend the TRO and secure witnesses; or "[o]ther good cause, unless the delay would create an extreme hardship on the other party." Sup. Ct. of N.J. & Att'y Gen. of N.J., New Jersey Domestic Violence Procedures Manual, § IV(G)(2) at 52 (Apr. 22, 2022)

A-0395-24

(emphasis added). As regards a plaintiff's non-appearance at an initial FRO hearing, the DV Manual states a court can dismiss a complaint "only if the following three conditions are met: The plaintiff was contacted; [t]he judge is satisfied (after hearing both parties' explanations) that the plaintiff's failure to appear was not the result of coercion or duress; and [t]he findings required as pursuant to the [o]rder of [d]ismissal were made." Id. § IV(G)(4) at 53.

Our courts are required to allow reasonable accommodation under Title II of the ADA. To that end, the DV Manual recommends that "[w]hen a plaintiff is unable to appear at the final hearing for good cause, arrangements shall be made for a remote appearance on the record." Id. § IV(G)(4) at 53. However, whether a hearing should be conducted virtually is a matter of the trial court's discretion. Pathri v. Kakarmalath, 462 N.J. Super. 208, 220 (App. Div. 2020). To assist trial courts in deciding whether to grant such a request, we directed courts to consider the following factors:

> • the witness' importance to the proceeding;
>
> • the severity of the factual dispute to which the witness will testify;
>
> • whether the factfinder is a judge or a jury;
>
> • the cost of requiring the witness' physical appearance in court versus the cost of transmitting the witness' testimony in some other form;

• the delay caused by insisting on the witness' physical appearance in court versus the speed and convenience of allowing the transmission in some other manner;

• whether the witness' inability to be present in court at the time of trial was foreseeable or preventable; and

• the witness' difficulty in appearing in person.

[Id. at 216.]

Pursuant to these principles, we reject plaintiff's due process challenges because they ignore the history of the parties' litigation and the context in which he filed the domestic violence complaint in this matter. Plaintiff's appellate appendix includes a copy of the transcript from the September 5, 2024 virtual appearance by the parties to argue the order to show cause plaintiff filed regarding parenting time before he filed his domestic violence complaint.

Because of litigants' actual or perceived stakes in the outcome of certain family disputes, it is unfortunately not unusual for Family Part judges to be confronted with parties who openly disrespect each other during a court proceeding and ignore the judge's instructions to comport themselves in a manner befitting the solemnity of being in court. In both respects, the contents of the September 5, 2024 transcript are appalling.

A-0395-24

The proceeding not only quickly devolved into name calling and cross-talking, but when the judge attempted to calm plaintiff's emotions, he verbally attacked the judge in ways we need not repeat here. Likewise, when the judge directed defendant and her husband to control their commentary, defendant's husband, in particular, simply ignored the judge and continued to call plaintiff offensive names. Based on this singular court event, it is no wonder the trial judge insisted on an in-person court appearance for the FRO hearing.

Indeed, the judge's ruling fell well within his obligations under the Code of Judicial Conduct to assure courtroom decorum (Canon 3, Rule 3.4) and a respectful demeanor by the parties befitting the dignity of the court (Canon 3, Rule 3.5). The ruling also emanates from the court's ability to control the mode of witness interrogation and evidence presentation "to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." N.J.R.E. 611(a). Based on our review of the record, and having nothing to do with the judge's capability, we have no confidence that he would be able to uphold his duties under Canon 3, or conduct the FRO hearing consonant with the principles of N.J.R.E. 611(a), if the trial were conducted in a virtual format.

A-0395-24

Beyond the September 5 transcript, our review of the record does not convince us that any of the <u>Pathri</u> factors favored plaintiff's request the court conduct the FRO hearing in a virtual format. Not only was plaintiff's ADA accommodation denied, but he failed to appeal it. The request was the same as the prior requests, which sought an accommodation based upon the assertion that he suffered from mental health conditions brought on by his interactions with defendant and her husband. However, plaintiff has chosen to litigate this issue by suing the trial judge and other Essex Vicinage defendants in federal court. For these reasons, we decline to adjudicate the merits of the ADA claim because the issue is arguably preempted based on plaintiff's choice of forum. <u>See</u> <u>S. Jersey Catholic Sch. Tchrs. Ass'n v. St. Teresa of the Infant Jesus Church Elem. Sch.</u>, 290 N.J. Super. 359, 375 (App. Div. 1996) (holding choice-of-forum preemption "is jurisdictional, because it relates to whether the state court has any adjudicatory power").

Regardless of whether preemption applies, we discern no deprivation of either due process or a reasonable accommodation because plaintiff had notice of the FRO hearing date and refused to appear. The trial judge followed the procedures required to dismiss the TRO. There is no dispute plaintiff knew he had to appear. The judge considered plaintiff's adjournment request and

defendant's objections thereto, which were predicated on the argument that prolonging the TRO deprived her of parenting time. Additionally, there was no objective evidence presented showing plaintiff's failure to appear was due to coercion or duress. Aside from the fact plaintiff's accommodation request was denied, his behavior during the September 5 hearing does not convince us he was incapacitated by duress.

We also reject plaintiff's assertion there was a due process violation because the trial judge tried the FRO ex parte and improperly concluded plaintiff was forum shopping. It is self-evident the judge's findings were limited to defendant's request to dismiss the case based on plaintiff's failure to prosecute. In considering the reasons for plaintiff's failure to comply with a court order to appear for trial, the judge could not ignore the totality of the circumstances, namely, the orders to show cause plaintiff had filed to limit defendant's parenting time, which were then withdrawn once he received a TRO in Bergen. The judge's conclusion plaintiff was forum shopping is amply supported by the record and was an appropriate consideration for deciding whether to adjourn the FRO hearing.

Plaintiff's assertion the case should not have been transferred to Essex Vicinage and had to remain in Bergen Vicinage is incorrect. The DV Manual

18

states: "Pursuant to N.J.S.A. 2C:25-29 and Rule 5:7A, a FRO hearing is to be held 'in the county where the ex parte restraints were ordered, unless good cause is shown for the hearing to be held elsewhere." Sup. Ct. of N.J. & Att'y Gen. of N.J., § IV(H)(1) at 71. The manual provides that "[t]ransfers may occur" when "[t]here is an existing FM, FD, or FN matter that has not been dismissed in the other county." Id. § IV(H)(1) at 72. The policy reasons for this are obvious in that the court most familiar with issues, including matters of custody, parenting time, and child support should conduct the FRO hearing because its outcome may impact those issues.

The Bergen Vicinage transferred this domestic violence matter to Essex Vicinage because the parties' ongoing post-judgment custody matter was pending in Essex. Notably, the transfer achieved the policy goals of § IV(H)(1) of the DV Manual because the trial judge utilized his experience handling the custody dispute to help him decide the format of the FRO hearing and whether it should be adjourned. This matter was properly venued in Essex Vicinage.

As we have affirmed the dismissal of plaintiff's complaint, we need not reach his argument that this matter be assigned to a different trial judge if it remains in Essex Vicinage because the issue is ostensibly moot. However, plaintiff's brief challenges the judge's refusal to recuse and our guidance is

19

warranted because this issue may arise in the future in the parties' broader litigation.

Pursuant to Rule 1:12-1(g), a judge shall be disqualified from sitting in any matter if there is any "reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead . . . the parties to believe so." It is improper for a judge to withdraw upon the mere suggestion that the judge is not qualified "unless the alleged cause of recusal is known to [the judge] to exist or is shown to be true in fact." Hundred E. Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 358 (App. Div. 1986) (citing Clawans v. Schakat, 49 N.J. Super. 415, 420-21 (App. Div. 1958)); see also State v. Marshall, 148 N.J. 89, 276 (1997) (explaining judges should not err on the side of caution by granting recusal motions). An adverse ruling against a party is not considered to be bias. Strahan v. Strahan, 402 N.J. Super. 298, 318 (App. Div. 2008).

A review of the record readily establishes there was no basis for the recusal request and the judge neither misapplied his discretion nor misconstrued the law when he declined to recuse. The judge's decisions throughout have been based on the application of the facts to the law. He demonstrated patience in the face of the incivility shown to him and the overall lack of decorum and respect for the court. Plaintiff's argument for recusal is grounded in a dissatisfaction

with the adverse rulings he received in this case. This simply was not a grounds for recusal.

Given that we have affirmed the TRO's dismissal and the judge's attendant rulings, we need not reach the merits of the September 18 order denying a stay pending appeal, except to note we affirm the order for the reasons expressed by the trial judge. Finally, to the extent we have not addressed an argument raised on appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

21                                                    A-0395-24